William WILSON, a/k/a Billy Ray
Wilson, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 85SC410.

Supreme Court of Colorado,
En Banc.

Sept. 14, 1987.

David F. Vela, State Public Defender, Barbara S. Blackman, Chief Deputy Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

The question raised in this case is whether a prosecutor's repeated statements during summation that the accused and his wife "lied" in testifying during trial constituted plain error. In affirming the conviction of William Wilson (defendant) for two felony counts of sexual assault, the court of appeals in an unpublished opinion held that the prosecutor's remarks, although improper, did not constitute plain error. We now reverse the judgment and remand the case for a new trial.

### I.

The defendant was tried by a jury on charges of second degree sexual assault[1] and sexual assault on a child.[2] The charges were based on the defendant's alleged assault on an eleven-year-old girl on May 31, 1983, in the defendant's trailer home in Holyoke, Colorado, where the defendant lived with his wife and children.

The following facts are not disputed. The defendant owned and operated a store in Holyoke, from which he sold new and used merchandise, and was acquainted with Mrs. H and her eleven-year-old niece, who is the alleged victim in the case and will be referred to as "M." Mrs. H was a close friend of the defendant's wife, and Mrs. H and her niece spent most of May 31 at the defendant's store. During the day the defendant asked Mrs. H whether M could spend the night at his house trailer, and

Mrs. H agreed. That night Mrs. H, her husband, their daughter, and their nephew and niece, M, ate dinner at the defendant's trailer home with the defendant, the defendant's wife, and their three children. Mrs. H and her husband left about 10 p.m. with their daughter and nephew, while M stayed and played with the Wilson children.

The events following the departure of Mrs. H and her husband were greatly disputed. M testified at trial to the following sequence of events. At bedtime, the defendant told her that she was to sleep in his room. When M got into the bed with the defendant and his wife, she noticed that the defendant was lying naked in bed. The defendant, according to M, removed M's nightgown and underpants and "stuck his penis up [her] behind" and performed cunnilingus on her. It was M's further testimony that the defendant had sexual intercourse with his wife while M watched.

The prosecution offered into evidence the bedding which the police had taken from the defendant's bedroom pursuant to a search warrant. M recognized the bedspread but was unable to identify the sheets, although she had done so at the police station after they were seized. The prosecution also presented testimony from M's aunt, Mrs. H, who had contacted the police after M allegedly told her two days after the incident that the defendant "had tried to take her clothes off." No medical evidence, however, was offered to corroborate the sexual assault.

The defendant testified in his own behalf. He stated that M had been at his trailer with other family members on the night in question, had played in his bedroom with the other children, and had spent the night in the trailer, but that M had not been in his bedroom after he and his wife went to bed. The defendant denied that any sexual assault had taken place. He acknowledged that he had disciplined the child for misbehavior at his store on June 1, 1983, after the alleged assault but before the charges were reported to the police, and further testified that he had denied Mrs. H's re-

---

**1.** § 18–3–403(1)(e), 8B C.R.S. (1986).

**2.** § 18–3–405(1), 8B C.R.S. (1986).

quests for employment during this same period of time. On cross-examination, the prosecution inquired of the defendant about prior felony convictions, and the defendant admitted to a 1976 conviction for assault with intent to commit robbery and a 1978 conviction for selling firearms without a license.[3]

The defendant's wife also testified at trial. She testified that M had been playing in the bedroom with the other children earlier in the evening but denied any of the other events previously discussed by M. The defendant also called four character witnesses who testified that his reputation for truth and honesty in the community of Holyoke was good.

During the initial phase of closing argument, the prosecution repeatedly stated that the defendant and his wife "lied" in their testimony, as illustrated by the following excerpts:

> The defense then put on their case. They called the defendant and he was aged 36, because he admitted it. And *he lied* and said that the child said she had asked if she could come over. And *he lied* and said that the kids played all over the place, including in the bedroom. And *he lied* when he said that [his child] threw up and that [M] came to him and said that she did.[4]
>
> *    *    *    *    *    *

They made [the testimony] up.

*    *    *    *    *    *

And [the defendant's wife] *lied* to you, ladies and gentlemen, and, why, because she had a motive to lie. She would be affected by the guilty verdict and she had a relationship to the defendant.

*    *    *    *    *    *

And [the defendant's wife] was telling the truth on June 26, although she wasn't yesterday.

*    *    *    *    *    *

You must decide whether you are going to believe [M] or believe the Defendant Bill Wilson, who has been caught in how many *lies*. Should we start counting them up? How many times has he *lied* about this case or about his past? I challenge defense counsel to name one time [M] ... lied at any time.

(Emphasis added). The prosecutor also suggested that the defendant had committed perjury, stating that the defendant "should be told by you ladies and gentlemen that perjury is no defense to a crime."[5] Moreover, on at least three occasions, the prosecutor expressed his personal belief that M was telling the truth.

Sometime after the jury retired to deliberate on the case, the jury foreperson submitted a note to the judge stating that a

---

**3.** The prosecutor also asked the defendant whether he had been convicted of burglary and theft in 1971, and the defendant denied these convictions. No other evidence of these convictions was offered by the prosecution.

**4.** During the trial the defendant testified that his young daughter had been playing with the other children in his bedroom, bouncing on the bed and having a pillow fight with the other children, and then became sick and threw up on the bed.

**5.** The excerpts in the text are not the only examples of the prosecutor's expression of personal opinion that the defendant was a liar. On cross-examination by the prosecutor, the defendant admitted that when a police officer first came to his door and informed him that he was investigating an incident involving "sexual assault on a child a couple of days ago," he told the officer that he was not present when the alleged assault occurred. When interviewed by the police three weeks later, the defendant admitted that he was there, explaining that he didn't under-

stand the time frame the officer was talking about in the first interview. This testimony generated the following comments by the prosecutor during his summation:

> Ladies and gentlemen, Officer Macklin asked him about a sexual assault on a young girl a couple of days ago and the defendant responded with a *lie.* He said, "I was not there." We know he was there. In fact, he did change his mind and tell the officer that later. He didn't change his mind when they were searching the trailer though, did he? Later on when they were looking for the sheets and the bedspread he didn't say, "Oh, by the way, Officer, I was there. I'm sorry I misled you." No. He *lied.* Evidence of guilt.

(Emphasis added). Although the prosecutor is here referring to the defendant's statement to the officer, rather than the defendant's trial testimony, it is no less an inappropriate expression of personal opinion relating to the credibility of the defendant.

unanimous verdict could not be reached and requested whether they could direct questions to anyone about the case. The judge responded to the note by telling the jury "to deliberate until you reach a unanimous verdict" and to "rely upon your own recollections of the evidence."

The jury found the defendant guilty of both counts. Although the defendant filed a motion for a new trial, he failed to raise as error the remarks made by the prosecutor during final argument. The court denied the motion for a new trial and, finding extraordinary aggravating circumstances, sentenced the defendant to concurrent six-year terms. The defendant appealed his conviction on several grounds, including improper conduct by the prosecution. The court of appeals in an unpublished opinion concluded that the prosecutor's summation, although not to be condoned, did not constitute plain error. We thereafter granted the defendant's petition for certiorari to consider whether the prosecutor's repeated characterizations of the testimony of the defendant and his wife as "lies" constituted plain error.[6]

## II.

We begin our analysis by reviewing long-standing precepts of law that must guide our resolution of this case. Although these precepts are simply stated, their application often proves difficult in individual cases.

### A.

■ It has often been stated that a prosecutor, while free to strike hard blows, "is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). For it is as much a prosecutor's duty "to refrain from improper methods calculated to produce a wrong conviction, as it is to use every legitimate means to bring about a just one." *Id.* Since the truthfulness of

testimony and the credibility of witnesses are matters to be determined by the trier of fact, and not by the advocates, it bears repeating again that it is improper for counsel to express his or her personal belief in the truth or falsity of testimony during final argument. *E.g., People v. Swanson,* 638 P.2d 45, 51 (Colo.1981); *People v. Trujillo,* 624 P.2d 924, 925 (Colo.App. 1980). While counsel may properly point to circumstances which may raise questions or cast doubt on a witness's testimony, and while counsel may also draw reasonable inferences from the evidence as to the credibility of witnesses, *e.g., People v. Constant,* 645 P.2d 843, 845–46 (Colo.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *People v. Lucero,* 677 P.2d 370, 373 (Colo.App.1983), counsel may not "throw onto the scales of credibility the weight of his own personal opinion," *State v. Ture,* 353 N.W.2d 502, 516 (Minn.1984).

■ Expressions of personal opinion as to the veracity of witnesses are particularly inappropriate when made by prosecutors in criminal trials. A prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereign whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. at 88, 55 S.Ct. at 633. A prosecutor's assertion of personal opinion concerning the credibility of witnesses poses two distinct dangers:

such comments can convey the impression that evidence not present to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may

**6.** We also granted certiorari on the question whether the trial court abused its discretion in refusing the defendant's extrinsic evidence of bias. At trial, the defendant attempted to introduce extrinsic evidence showing that Mrs. H had previously filed a report alleging that the defendant's older son had molested her daughter and that on June 2, 1983, she also made a report to the welfare department concerning the defendant's younger son. The trial court disallowed such evidence. Since, however, we resolve this case solely on the basis of the prosecutor's summation, we do not address the correctness of the evidentiary ruling of the trial court.

induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young,* 470 U.S. 1, 18–19, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985).

Both the Code of Professional Responsibility and the American Bar Association Standard for Criminal Justice leave no room for doubt about the impropriety of expressing a personal opinion on the credibility of a witness. DR 7–106(C)(4) of the Code of Professional Responsibility states that "[i]n appearing in his professional capacity before a tribunal, a lawyer shall not ... [a]ssert his personal opinion as to ... the credibility of a witness ... or as to the guilt or innocence of an accused...." Standard 3–5.8(b) of the American Bar Association Standards for Criminal Justice states that it is unprofessional conduct for a prosecutor to express a personal belief or opinion as to truth or falsity of any testimony.[7]

On prior occasions we have not only disapproved prosecutors' expressions of opinion as to the credibility of witnesses during final argument, *see, e.g., People v. Gutierrez,* 622 P.2d 547 (Colo.1981); *People v. Wright,* 182 Colo. 87, 511 P.2d 460 (1973), but we have also specifically cautioned prosecutors to avoid such remarks in cases of sexual assault on children in order to ensure "that the jury tries the case solely on the basis of the *facts* presented to them." *People v. Elliston,* 181 Colo. 118, 126, 508 P.2d 379, 383 (1973) (emphasis in original). We take this occasion to emphasize that it is the responsibility of the trial court "to ensure that final argument to the jury is kept within proper, accepted bounds." I ABA Standards for Criminal Justice 3–5.8(e) (2d ed. 1980).

**B.**

■ When no contemporaneous objection is made to the asserted error or defect, appellate review is limited to determining whether the error or defect rises to the level of "plain error." Crim.P. 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *See* C.A.R. 35(e) (appellate court shall disregard any error or defect not affecting substantial rights of parties). Since plain-error claims arise in a myriad of settings and ultimately turn on the facts and legal rules applicable to the particular case, it is not surprising that our prior decisions have utilized various formulations of the appropriate standard for evaluating such claims. *E.g., Graham v. People,* 705 P.2d 505 (Colo.1985) (plain error is a defect affecting substantial rights that is "obvious and grave" and requires reversal only if reasonable possibility that it contributed to conviction); *People v. Constant,* 645 P.2d 843 (prosecutorial misconduct constitutes plain error only where there is substantial likelihood that it affected verdict or deprived defendant of fair trial); *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972) (plain error is error that is obvious and substantial; and unless there is reasonable possibility that error contributed to conviction, reversal is not required); *People v. Bercillio,* 179 Colo. 383, 500 P.2d 975 (1972) (plain error is error requiring reversal due to manifest prejudice).

Although these formulations of the plain-error rule are somewhat varied, there is a common theme running through these decisions. That theme is that an error or defect in trial proceedings to which an accused fails to make a contemporaneous objection will not be the basis for reversal unless it casts serious doubt upon the basic

---

7. The commentary to Standard 3–5.8 points up the reason for the prohibition against expressing a personal opinion on the truth or falsity of testimony:

> The prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct. Prosecutorial conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with the prosecutor's office but also because of the fact-finding facilities presumably available to the office.

I ABA Standards for Criminal Justice 3–5.8, Commentary at 3.88 (2d ed. 1980).

fairness of the trial itself. Since the plain-error rule of Crim.P. 52(b) is calculated to temper the contemporaneous-objection requirement in the interests of permitting an appellate court to correct particularly egregious errors, we believe the appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See United States v. Young*, 470 U.S. at 16, 105 S.Ct. at 1047.

### III.

■ In resolving this case it is important to point out what this case does not involve. We are not dealing here with prosecutorial remarks that were invited by prejudicial statements made by defense counsel in summation. Although the so-called "invited response" rule does not provide a prosecutor with a license to make otherwise improper remarks in summation, a reviewing court in assessing a plain-error claim of prosecutorial misconduct in summation must not only weigh the impact of the prosecutor's remarks on the trial but also must take into account "defense counsel's opening salvo." *United States v. Young*, 470 U.S. at 12, 105 S.Ct. at 1045. In the instant case, it was the prosecutor, not defense counsel, who fired the opening barrage in the initial phase of summation. Nor are we dealing here with isolated remarks that were "few in number, momentary in length, and were a very small part of a rather prosaic summation." *People v. Mason*, 643 P.2d 745, 753 (Colo.1982).

■ What we are dealing with here is a record depicting repeated and emotionally charged expressions of the prosecutor's personal opinion that the defendant and his wife lied in their sworn testimony before the jury. These remarks far exceeded the outer limits of proper advocacy and have no place in the administration of justice.[8] The prejudicial effect of such argument was exacerbated by the prosecutor's suggestion that the defendant committed perjury and by his repeated expressions of personal belief in the veracity of M.

■ The prejudice inherent in the prosecutor's statements that the defendant and his wife were lying takes on added significance when these statements are viewed against the state of the evidence. The issue of credibility was of critical significance to the resolution of this case. The defendant's testimony that M had been playing in the bedroom earlier in the evening offered a plausible explanation as to how the child was able to identify the bedding. In view of the fact that there was no medical or other physical evidence corroborating M's allegations, the outcome of the case turned on whether the jury chose to believe M or the defendant and his wife. That the jurors had extreme difficulty in resolving the issue of credibility is obvious from their note asking the court for some assistance in resolving what then appeared to be a deadlocked jury.

■ We recognize that the court instructed the jury that it was their responsibility as jurors to determine the credibility of witnesses. It would defy common sense, however, to believe that this instruc-

---

8. Although not necessary to our resolution of this case, we note that in the rebuttal phase of summation the prosecutor ended his argument by improperly appealing to the jury to consider the wishes of the community in reaching a verdict:

   I ask you to consider the community as a whole. What does the community want when there are so many people sitting here watching day after day? They want what the prosecution wants, ladies and gentlemen. They want a verdict in this case of guilty, guilty of sexual assault in the second degree and guilty—not of the lesser offense—but of sexual assault on a child. Thank you very much.

Standard 3–5.8 of the American Bar Association Standards For Criminal Justice states in pertinent part as follows:

   The prosecutor should not use arguments calculated to inflame the passion or prejudices of the jury.

   The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law....

I ABA Standards for Criminal Justice 3–5.8(c) and (d) (2d ed. 1980).

tion was sufficient to neutralize the impact of the prosecutor's improper remarks during summation. Although jurors are obviously aware that the arguments of counsel are not evidence, we cannot ignore the fact that jurors do pay heed to the arguments of counsel in arriving at a result.

Considering the prosecutor's remarks in the context of the entire record, including the flagrancy and frequency of the improper statements and the obvious significance of those statements to the ultimate verdict, we are satisfied that the prosecutor's repeated expressions of his personal opinion about the credibility of the defendant and his wife so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.

The judgment of the court of appeals is reversed and the case is remanded to that court with directions to return the matter to the district court for a new trial.

VOLLACK J., dissents.

VOLLACK, Justice, dissenting:

I disagree with the majority's formulation of the plain-error review standard: "whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." Maj. op. at 420. Prior cases decided by this court set forth a formulation of the plain-error rule which, in my opinion, supports the affirmance of the defendant's conviction. Therefore, I respectfully dissent.

The issue before us is not whether the prosecutor's references to the defendant as a liar were improper, but whether it was plain error necessitating a new trial. I do not contest that a prosecutor's expression of personal opinion should not be condoned. Guidelines promulgated by the American Bar Association, cited by the majority and the United States Supreme Court in *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), state:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

*ABA Standards for Criminal Justice* 3–5.8 (2d ed. 1980).

In *United States v. Young*, the Supreme Court considered whether a prosecutor's misconduct constituted plain error. The Court stated that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." 470 U.S. at 11, 105 S.Ct. at 1044. "To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution." *Id.* at 16, 105 S.Ct. 1047 (quoting *Johnson v. United States*, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring)).

While it is true that the plain-error doctrine of Crim.P. 52(b) tempers the rigid application of the contemporaneous-objection requirement, see Maj. op. at 420; *United States v. Young*, 470 U.S. at 15, 105 S.Ct. at 1046, the plain-error doctrine should not be a means by which appellate review of trial court errors absent timely objection becomes commonplace. Although an appellate court can examine the entire trial court record, it cannot gauge the impact on the jury of certain remarks or arguments.

I agree with the test set forth in prior case law: "The focus of inquiry under the plain error standard is whether the asserted error substantially influenced the verdict or affected the fairness of the trial proceedings." *People v. Aalbu*, 696 P.2d 796, 810 (Colo.1985). "The proper inquiry in determining whether a claimed error amounts to 'plain error' or instead may be considered harmless is whether the error substantially influenced the verdict or affected the fairness of the trial proceed-

ings." *People v. Romero,* 694 P.2d 1256, 1268 (Colo.1985). In my view, the test set forth in *Aalbu* and *Romero* better articulates the limited circumstances in which an appellate court can address an error where no objection was made.

While I do not condone the prosecutor's calling the defendant a "liar," I do not believe it rises to the level of plain error. In *People v. Swanson,* 638 P.2d 45 (Colo. 1981), we considered whether a prosecutor's reference to a witness as a "liar" constituted plain error. We recognized that expressions of a prosecutor's personal belief in the truth or falsity of testimony are improper. However, we stated that the trial court was in the best position to determine the impact on the jury of those expressions and that the prosecutorial misconduct was not so egregious as to constitute plain error. *Id.* at 51. In my opinion, the same may be said in the instant case. Here, the prosecutor attacked the credibility of the defendant and defense witnesses throughout their cross-examination. His stance regarding their testimony was obvious throughout the trial. In his closing argument, the prosecutor reviewed the state of the evidence. He did not allude to facts not presented during the trial, but rather, in presenting instances in which witnesses may have been inconsistent, characterized the inconsistencies as "lies." In this, the prosecutor may have been overzealous. However, we have stated that "a prosecutor may draw reasonable inferences as to the demeanor and credibility of witnesses." *People v. Constant,* 645 P.2d 843, 846 (Colo.1982); *see also ABA Standards for Criminal Justice* 3–5.8(a) (2d ed. 1980). In *Constant* we also noted that "prosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error." 645 P.2d at 847 (quoting *People v. Sepeda,* 196 Colo. 13, 25, 581 P.2d 723 (1978)).

I do not believe that, in reviewing the entire record, we can determine that the prosecutor's comments during his closing argument "substantially influenced the verdict." *Romero,* 694 P.2d at 1268. The fact that the jury had trouble reaching a unanimous verdict does not support the majority's contention that this somehow proves that the prosecutor's comments swung the verdict to guilty. I do not believe we can make this assumption.

Because I believe the prosecutor's comments, although improper, did not constitute plain error, I would affirm the defendant's convictions.