**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daryl S. MARTIN, Defendant–Appellant.**

**No. 89CA1576.**

Colorado Court of Appeals,
Div. III.

Aug. 27, 1992.

Rehearing Denied Oct. 15, 1992.

Certiorari Denied April 26, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

In response to various robbery and drug charges, defendant, Daryl S. Martin, pled not guilty by reason of insanity, but upon trial of the sanity issue, he was found sane. Thereafter, in a trial on the merits, he was convicted of two counts of aggravated robbery of a controlled substance, two counts of crimes of violence, possession of a controlled substance, and one count of conspiracy to commit aggravated robbery of a

controlled substance. He appeals, asserting that error was committed during both the sanity trial and the trial on the merits. We affirm.

On July 13, 1987, and July 22, 1987, two Colorado Springs pharmacies were robbed of drugs and cash by a man with a gun. On July 24, 1987, defendant was arrested, and a search of his house, incident to his arrest, revealed bottles of suspected narcotics and evidence from both robberies.

## I.

Defendant first contends that a new sanity trial is required because the jury did not make separate findings that he was sane at the time of the commission of each of the robberies and on the date of the search of his house. We disagree.

■ Initially, we note that defendant made no objection to the verdict form submitted in the sanity trial, nor did he raise this alleged deficiency at any time in the trial court. Thus, arguably, he has waived any objection to the verdict form. *See People v. Watson*, 668 P.2d 965 (Colo.App. 1983).

However, we elect to address the merits of defendant's contention, mindful that the plain error standard of review applies. Crim.P. 52(b). Thus, we must determine whether, after reviewing the entire record, we can say with fair assurance that the alleged error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment. *See Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ A verdict form is not void for ambiguity or incompleteness if the jury's intended meaning can be ascertained by reference to the record. *People v. Goetz*, 41 Colo.App. 60, 582 P.2d 698 (1978). Thus, a verdict is to be reasonably construed in light of the issues submitted to the jury and the instructions of the court. *People v. Roberts*, 705 P.2d 1030 (Colo.App.1985).

■ The record here demonstrates that the issue of defendant's sanity was tried and argued throughout with reference to all three incidents taken in combination. In both his opening statement and closing argument, the prosecutor asserted that "defendant was sane at the time *these events* happened." (emphasis added) Likewise, defense counsel argued that defendant was insane during the entirety of the approximate two-week period spanning the incidents.

Additionally, the jury instructions reflect the basic theme asserted by the parties. The first instruction provides:

> You are instructed that the defendant in this case is charged with the crimes of Aggravated Robbery and Conspiracy to Commit Aggravated Robbery alleged to have been committed on July 13, 1987 and July 22, 1987, and Possession of a Schedule II Controlled Substance alleged to have been committed on July 24, 1987. The defendant has pleaded 'NOT GUILTY BY REASON OF INSANITY.'

> It is now your function to determine the issue raised by the defendant's plea. You are instructed that the defendant's guilt or innocence as to any alleged offenses is not in any way involved herein.

> You are further instructed that the sole purpose of the evidence admitted in this inquiry is to enable you to justly determine by your verdict whether the defendant, Daryl S. Martin, was sane or not guilty by reason of insanity at the time of the commission of the alleged crimes on July 13, 1987, July 22, 1987, and July 24, 1987. You should determine this fact solely from the evidence and the written instructions given by the Court.

Defense counsel did not object to the instructions or to the verdict forms at trial.

Defendant relies on the following language in *People v. Beasley*, 43 Colo.App. 488, 608 P.2d 835 (1979) to support his assertion that the instructions, as worded, constituted reversible error: "Where the acts upon which the charges are based are separated by time and location, a finding as to a defendant's sanity at the time of one act is not conclusive as to his sanity at the time of another act." However, defendant's argument is unpersuasive because

the facts in *Beasley* differ significantly from those here.

In *Beasley,* defendant had shot the male victim during a dispute about drugs. He then kidnapped that victim's female companion, took her on an all-night ride, and ultimately shot her five times. Defendant's medical expert testified that one of the indications of defendant's insanity was his self-righteous attitude toward drug dealers such as the male victim. Therefore, a division of this court concluded that the jury could have determined that Beasley was insane as to the assault against the male victim but perhaps not as to the attacks upon his female companion.

Here, in contrast, the record contains no evidence that different factors concerning the three incidents could have led to different determinations concerning the sanity issue. ·

Accordingly, construing the verdict in light of the issues and instructions in the case, *People v. Roberts, supra,* we conclude that defendant has failed to demonstrate serious doubt concerning the reliability of the sanity determination. *Wilson v. People, supra.*

## II.

Defendant next argues that the trial court failed to respond adequately and correctly to the jury's questions during the sanity trial. We find no error.

### A.

In its first question, the jury requested definitions of the terms "moral obliquity" and "mental depravity." These terms were used in the definitional instruction on insanity, the correctness of which defendant does not dispute.

Defendant argues that the trial court's answers were inadequate and that they improperly turned the jurors' attention away from resolution of the sanity issue. We disagree.

■ The decision to give a supplemental or clarifying instruction lies within the discretion of the trial court. *People v. Monto-*

ya, 709 P.2d 58 (Colo.App.1985), *rev'd on other grounds,* 736 P.2d 1208 (Colo.1987). The jury should be referred back to the original instructions only when it is apparent that the jury has overlooked some portion of the instructions or when the instructions clearly answer the jury's inquiry. *Leonardo v. People,* 728 P.2d 1252 (Colo. 1986).

While the terms "depravity" and "obliquity" are not used in everyday language, they are well within the comprehension of a jury. Thus, as our supreme court held in *Simms v. People,* 174 Colo. 85, 482 P.2d 974 (1971), a trial court's failure to define these terms further was unnecessary and, thus, did not constitute error in that case.

■ The record here shows that the trial court was fully aware of the rule in *Simms, supra.* Nevertheless, in its discretion, and after conferring with counsel and consulting various dictionary sources, it chose to provide the jury with a further definition.

The court's answer read as follows:
1. Moral Obliquity
   Dishonesty or perversity, deviation from accepted moral standards.
2. Mental Depravity
   The quality or state of being depraved
   Depraved—marked by corruption or evil—perverted
   Perverted—turned away from what is generally done or accepted.

These definitions were appropriate and correct explanations of the words at issue. They did not divert the jury's attention from its central inquiry, *i.e.,* whether defendant knew right from wrong, nor did they improperly or unduly focus the jury's inquiry on standards of morality.

Instead, they merely answered the jury's question in a simple, straightforward, and correct fashion, thus allowing the jury to focus its attention on its task. Accordingly, while the trial court was not obligated to respond to the jury's inquiry in the manner it selected, we see no abuse of discretion either in its election to respond or in the response that it gave. *Leonardo v. People, supra.*

### B.

The jury's next inquiry consisted of the following questions:

QUESTION: Do we have to agree under the law as to whether he was right or wrong under the law only?

If he understood that what he did was illegal does this meet the requirement of knowing right and wrong?

The court's response was:

ANSWER: Knowledge that an act is illegal may justify the inference of knowledge that it is wrong. Nonetheless, it is the knowledge of wrong, conceived as moral wrong, that is the controlling test under the statute.

In *Leonardo v. People, supra,* our supreme court held that, when a deliberating jury indicates "that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the judge has an obligation to clarify the matter for the jury in a concrete and unambiguous manner." Defendant argues that the first of these two questions raised an issue that was central to resolution of the sanity inquiry. Consequently, he asserts, the trial court's failure to answer this question constitutes reversible error. We disagree.

Initially we note that defendant failed to object at trial before the court's response was delivered to the jury. Accordingly, a plain error standard of review applies. Crim.P. 52(b). *People v. Schuett,* 833 P.2d 44 (Colo.1992). *See Wilson v. People, supra.*

In our view, the trial court's answer thoroughly and properly answered the jury's inquiry. The core of the jury's concern was whether a finding that the defendant knew his acts were illegal dictated the conclusion that defendant knew right from wrong and was, therefore, sane. The court's response that, while knowledge of the illegality of an act was relevant to determining defendant's knowledge of wrong, the controlling test under the statute required that defendant know wrong, conceived as moral wrong, accurately resolved the jury's concern. As our supreme

court noted in *People v. Serravo,* 823 P.2d 128 (Colo.1992), the term "wrong" in the statutory definition of insanity codified at § 16–8–101(1), C.R.S. (1986 Repl.Vol. 8A), refers to moral wrong, not to illegality or unlawfulness.

Moreover, we decline to elevate form over substance and adopt the mechanistic approach urged by defendant in analyzing the court's response to the jury's inquiry. We do not believe that, simply because a jury expresses its concern in the form of two questions, a trial court is obligated to provide two answers. Instead, the court should focus on the nature of the inquiry and respond accordingly.

In our view, the trial court's answer here constituted a legally correct and well-phrased response. Accordingly, no error, much less plain error, occurred.

### C.

The jury's final question and the answer given by the court were as follows:

QUESTION: When we talk about the controlling factor being morally wrong does that mean according to our, or the people's moral wrong or the Defendant's?

ANSWER: The Community's.

As he did at trial, defendant contends that the trial court should have answered this inquiry by referring the jury back to the original instructions. He argues that the court's answer diverted the jury's focus from the major issue—whether defendant could distinguish right from wrong at the time of his acts—to the issue of the moral correctness of the defendant's actions. We are unpersuaded.

The trial court found, and we agree, that this question was a follow-up to the jury's previous inquiries and addressed a component of the sanity instruction which was not answered elsewhere within the instructions.

In our view, the jury's inquiries were properly centered around the issue whether defendant could distinguish right from wrong. The answer to the previous questions had instructed the jury that "it is

the knowledge of wrong, conceived as moral wrong, that is the controlling test under the statute." The next logical step, as the jury recognized, was to determine the definition of "wrong."

The trial court's answer was a correct statement of the law, *People v. Serravo, supra,* and focused rather than diverted the jury's deliberation. Accordingly, the trial court did not err in responding in the fashion it did.

### III.

Finally, defendant argues that the evidence was insufficient to sustain the verdict finding him guilty of conspiracy to commit aggravated robbery. We disagree.

Our task is to view the evidence, both direct and circumstantial, in the light most favorable to the prosecution and determine whether this evidence is substantial and sufficient to support a conclusion by a reasonable person that defendant is guilty of the crime beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988). The jury must decide the often difficult questions of witness credibility and determine the weight to be given conflicting items of evidence. *People v. Quick,* 713 P.2d 1282 (Colo.1986). Concomitantly, the jury must also resolve contradictions, discrepancies, and inconsistencies in the testimony of the witnesses for one party. *See People v. Martinez,* 191 Colo. 428, 553 P.2d 774 (1976).

The testimony of the prosecution's witnesses varied. Several witnesses testified that they saw defendant leave the scene of one robbery on a bicycle, pedal quickly a short distance, enter a waiting car which was already running, and speed off. The driver of this car was defendant's roommate, who admitted to police that he picked up defendant but denied any knowledge of the robbery.

However, this roommate's testimony was contradicted by that of another of defendant's roommates. That roommate testified that the driver roommate had "told me later that [defendant] robbed the place, or something, and that [the driver roommate] had stayed outside." Moreover, in a search of the house where defendant resided, police found drugs of the kind taken in the robberies scattered throughout the premises and not confined merely to defendant's bedroom.

Viewing this evidence and its inferences in the light most favorable to the prosecution, we conclude that a reasonable jury could find that defendant conspired to commit this robbery. Thus, we reject defendant's contention.

The judgment is affirmed.

RULAND, J., concurs.

JONES, J., dissents.

Judge JONES dissenting.

I respectfully dissent as to Part I of the majority opinion and would, therefore, reverse and remand for a new sanity trial.

I agree with defendant's contention that the trial court erred during his sanity trial because the jurors received only a single verdict form which did not require them to make a finding of sanity as to each of the three incidents for which he was charged. Also, I disagree with the People's assertion that, because defendant did not object to the verdict form during his sanity trial, he has waived any objection to it.

When no contemporaneous objection is made at trial to the error asserted on appeal, Crim.P. 52(b) requires that appellate review is limited to determining whether the error rises to the level of "plain error." "[T]he appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415 (Colo.1987). Thus, defendant's failure to object to the verdict form during trial does not constitute a waiver of his right to appeal if such error caused the trial proceedings to be so fundamentally unfair as to jeopardize the validity of defendant's conviction.

Defendant relies on *People v. Beasley,* 43 Colo.App. 488, 608 P.2d 835 (1979) for the proposition stated therein that:

> Where the acts upon which the charges are based are separated by time and location, a finding as to defendant's sanity at the time of one act is not conclusive as to his sanity at the time of another act.

In *Beasley,* defendant's convictions were reversed because a jury could have concluded that defendant undertook the first act for which he was charged, with a different mental state than the mental state he possessed six hours later, when he performed the second act for which he was charged.

I conclude that the *Beasley* rationale must apply here. Defendant was charged with committing an aggravated robbery on July 13, 1987, with committing another aggravated robbery on July 22, 1987, with conspiracy to commit the respective robberies on each date, and with possession of a controlled substance on July 24, 1987. As to each of the three sets of criminal offenses committed on three separate days in widely separated locations he entered three separate pleas of not guilty by reason of insanity. Thus, as to each of such pleas, a separate finding as to sanity was required. *People v. Beasley, supra.*

Furthermore, § 16–8–101, C.R.S. (1986 Repl.Vol. 8A) requires that, when sanity is placed in issue, a determination of sanity or insanity is to be made by examining whether the defendant "is so diseased or defective in mind *at the time of the commission of the act* as to be incapable of distinguishing right from wrong with respect to *that act....*" (emphasis added) Thus, a determination of a defendant's sanity at the time of one act cannot be conclusive as to his sanity at the time of another act. *People v. Beasley supra; see People v. Kernanen,* 178 Colo. 234, 497 P.2d 8 (1972). For that reason, a separate verdict form is required to be submitted to the jury as to each count as to which sanity is at issue.

I would, therefore, hold that the trial court erred when it gave the jury only a single verdict form concerning the three separate sets of charges. In my view, it is not apparent whether the jury believed that defendant was sane when he committed each of the criminal offenses with which he was charged. And, under the form as given, the jury was denied the opportunity to express its findings as to each offense. Thus, the jury's general finding of sanity resulted in denial of a fundamentally fair sanity trial, and plain error occurred. *See Wilson v. People, supra.*

I would vacate the judgments of guilty and the judgment of sanity and would remand this matter for a new sanity trial with directions that the trial court instruct the jury and submit verdict forms to the jury in accordance with the principles set forth in this dissent.