The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Andrew Franklin TRUJILLO, Defendant–Appellant.

No. 91CA0355.

Colorado Court of Appeals, Div. IV.

Dec. 17, 1992.

As Modified on Denial of Rehearing March 25, 1993.

Certiorari Denied Oct. 25, 1993.

**544**

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge BRIGGS.

Defendant, Andrew F. Trujillo, appeals the judgments of conviction entered on jury verdicts finding him guilty of two counts each of simple robbery, aggravated robbery, crime of violence, and conspiracy to commit aggravated robbery. The convictions involve the robbery of five convenience stores and a motel over the course of a month. Defendant also appeals the judgment in his initial sanity trial entered on a jury verdict finding him sane during the commission of the crimes charged, and challenges the sentences entered on the aggravated robbery counts. We affirm the judgments on all counts, but vacate the sentences on the aggravated robbery counts and remand for resentencing.

I.

Defendant asserts for the first time on appeal that at both trials the court's advisements and findings pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984) were insufficient. The court did not advise defendant that, if he elected not to testify, the jury could be instructed that no negative inferences should be drawn from his silence. Defendant contends that his decisions whether to testify at the two trials were therefore not voluntarily, knowingly, and intelligently made. We are not persuaded.

Defendant chose not to testify at the sanity trial. Consequently, the asserted deficiency in the *Curtis* advisement could not have adversely impacted his decision to remain silent. Hence, we need address the issue only in regard to the trial on the merits, in which the defendant chose to testify.

It is the duty of the trial court to ascertain whether a defendant's decision to testify or remain silent is made voluntarily, intelligently, and knowingly. *People v. Curtis, supra.* In *People v. Mozee*, 723 P.2d 117 (Colo.1986), our supreme court

acknowledged that an advisement and determination on the record regarding the effectiveness of a waiver of the privilege against self-incrimination helps assure that the waiver is effective and facilitates meaningful appellate review without significantly impeding trial court proceedings. However, the court concluded that "the absence of such an on-the-record advisement and determination of waiver before the defendant testifies will not automatically render a defendant's waiver invalid." *People v. Mozee, supra,* at 124.

■ The record reflects that, with the exception of advising defendant that the jury could be instructed not to draw any negative inferences from his silence, the court gave a complete *Curtis* advisement during defendant's initial sanity trial and further discussed with defendant his right to testify or remain silent prior to his decision not to testify. Defendant presumably had also been advised of his right to remain silent at his first appearance. *See People v. Mozee, supra.*

At the trial on the merits, the court gave an equally complete *Curtis* advisement. It addressed in detail the advantages and disadvantages of testifying, and again specifically informed defendant of his right to remain silent. Following this, the court twice asked the defendant whether he understood his rights and whether he wished to testify on his own behalf. Defendant acknowledged that he understood his rights, that he had discussed the decision with his attorney, and that the decision was his, and not his attorney's.

Statements made by defendant after his *Curtis* advisement at the trial on the merits indicate that his decision to testify arose from the unavailability of witnesses he had intended to call to present his theory of the case and not from his concern about any inferences the jury might draw from his silence. Defendant has not asserted, and there is no evidence indicating, that his decision would have been different had the court made a more complete *Curtis* advisement. *See People v. Mozee, supra.*

We conclude that the trial court's determination that defendant's decision to testify was voluntarily, intelligently, and knowingly made is supported by competent evidence in the record. *See Roelker v. People,* 804 P.2d 1336 (Colo.1991). Therefore, that decision provides no basis for reversing the convictions.

## II.

Defendant next contends that his conviction for conspiracy to commit aggravated robbery of the motel must be vacated because there is no evidence independent of his admission to establish the *corpus delicti.* We disagree.

■ A conviction cannot rest solely on a defendant's pre-trial confession. The *corpus delicti* of a crime must be proved by evidence independent of a confession. The *corpus delicti* ordinarily consists of a penally proscribed injury, such as a body in a homicide, and unlawful conduct causing the injury. *People v. Smith,* 182 Colo. 31, 510 P.2d 893 (1973); *McCormick on Evidence* § 145 (E. Cleary 4th ed. 1992).

■ "Only slight" corroborating evidence is required, and it can be direct or circumstantial. It is enough if the additional evidence is sufficient to convince the jury that the crime charged is real and not imaginary. *People v. Quinn,* 794 P.2d 1066 (Colo.App.1990).

■ The difficulty in analyzing the *corpus delicti* in inchoate crimes such as conspiracy, attempt, and solicitation is that there is no tangible injury which can be isolated as the *corpus delicti. See Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). A more appropriate analysis in these circumstances is to determine whether there is evidence independent of the confession or admissions which would tend to establish the truthfulness of the defendant's statements. *See State v. Parker,* 315 N.C. 222, 337 S.E.2d 487 (1985); *McCormick on Evidence, supra.*

■ Here, defendant in his pre-trial confession stated that he drove to the motel with two others named Haxton and Tay-

## 546

lor for the purpose of robbing the motel. Defendant and Haxton waited in the parking lot while Taylor robbed the motel with a handgun. Defendant correctly identified a photograph of Taylor as the person who had committed the robbery. Defendant told the police officer to whom he confessed that the handgun Taylor used was the same .25 caliber chrome-plated handgun that a different confederate named Hall had used in a robbery two days later. Defendant admitted he also drove the getaway car in that robbery.

At trial, the victim of the motel robbery gave a description of the handgun which matched that given by defendant in his pretrial confession. She further testified that the gun being held by Hall in a surveillance photo taken during the second robbery looked "exactly" like the gun used in the first robbery. When Taylor and Hall were arrested the police found a handgun like that in the photo.

Because not all the same concerns about the reliability of out-of-court confessions and statements exist when statements are made in open court, judicial confessions and admissions do not ordinarily require the same corroboration. *See State v. Scho-maker,* 303 N.W.2d 129 (Iowa 1981); *McCormick On Evidence, supra.* Although defendant claimed he was coerced, he testified at trial he was in the getaway van during the second robbery by Hall. Defendant also testified that he provided a statement to the district attorney pertaining to his involvement with Taylor, who then, along with Hall, pled guilty.

We conclude that the independent corroboration of defendant's description of the handgun by the first robbery victim, defendant's correct identification of Taylor's photograph as that of the robber, the recovery of the handgun when Taylor and Hall were arrested, and defendant's testimony at trial together provide sufficient independent evidence tending to establish the truthfulness of defendant's admitted participation in a conspiracy to rob the motel.

### III.

■ Defendant contends that the jury's guilty verdicts on two charges of conspiracy to commit aggravated robbery must be vacated because they are inconsistent with the not guilty verdicts on the charges of aggravated robbery for the same two robberies. The argument is that the only evidence of the conspiracies, defendant's confession, also establishes that defendant drove the getaway cars in the two robberies. Thus, he asserts that, as in *Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966), the conspiracy verdicts cannot stand. The People argue that the verdicts are not inconsistent because the crimes involve different elements of proof.

Neither party has addressed whether defendant is precluded from challenging the verdicts by acquiescing in a response the trial court apparently provided to a jury question on this precise point. We conclude that he is.

We note at the outset that the court did not give a standard carrying instruction in the form of *COLJI–Crim.* No. 38:02 (1983). This instruction, which should explain to the jury whether its verdict on one count will control the verdict on another, is to be given whenever there is more than one count charged in the information or indictment. However, defendant did not object at trial and has not challenged the omission on appeal.

After jury deliberations had begun, the court informed counsel for both parties of a question asked by the jury. The question was whether the jury could convict on the charges of conspiracy to commit aggravated robbery without convicting on the charges of aggravated robbery and crime of violence.

The court stated to counsel, "And my answer, of course, is yes. Any objection to that?" Both the prosecutor and defense counsel responded that there was no objection. The record contains no other reference to the inquiry or response, and we assume the jury was so instructed.

Defense counsel did not inject the claimed error into the proceedings by re-

questing the jury be given the response to its question, and thus, the invited error doctrine arguably does not apply. *See People v. Shackelford,* 182 Colo. 48, 511 P.2d 19 (1973). However, defense counsel did not merely fail to make a contemporaneous objection, which would result in a plain error analysis. *See Wilson v. People,* 743 P.2d 415 (Colo.1987).

Here, defense counsel actively participated in the process at issue and expressly and deliberately acquiesced in the response which the court provided to the jury's question. By this choice in trial strategy, defendant avoided the possibility the jury might feel compelled to convict on the charges of aggravated robbery if it returned guilty verdicts on the charges of conspiracy. We conclude that, under these circumstances, defense counsel's agreement to the response by the trial court to the jury's inquiry prevents defendant from now asserting error. *See Boothe v. People,* 814 P.2d 372 (Colo.1991) (Lohr, J., concurring in part and in the judgment, and dissenting in part); *Valley v. People,* 165 Colo. 555, 441 P.2d 14 (1968); Crim.P. 30; *cf. People v. Romero,* 694 P.2d 1256 (Colo. 1985).

## IV.

■ Defendant also contends for the first time on appeal that he is entitled to a new sanity trial because the jury did not make separate findings that he was sane at the time of each of the robberies. We conclude a new sanity trial is not warranted given the circumstances presented here.

In *People v. Beasley,* 43 Colo.App. 488, 608 P.2d 835 (1979), this court reversed the jury's finding of sanity. We held that if the acts upon which multiple charges are based are separated by time and location, a finding as to a defendant's sanity at the time of one act is not necessarily conclusive as to his sanity at the time of another act.

Here, however, defense counsel made no objection to the single verdict form and throughout the sanity trial treated the counts collectively, focusing on whether "during the time period in question" defendant fit the legal definition of insanity. The jury was given instructions on defendant's theory of the case and the jury's function, both of which referred to defendant's claim of insanity during the entire period encompassing the robberies.

By this choice in trial strategy defendant took the risk of being found sane at the time of all the robberies but created the opportunity to be acquitted based on insanity of all the crimes charged. Defendant also avoided the possibility of being found insane at the time of some but not all the robberies. We conclude that, as with the claim of inconsistent verdicts, defense counsel's agreement to the sanity verdict form prevents defendant from now asserting error. *See People v. Martin,* 851 P.2d 186 (Colo.App.1992); *cf. People v. Romero, supra.*

■ Even if defendant were not precluded from objecting to the verdict form, his failure to object at trial would result in review under the standard of plain error. *See People v. Martin, supra.* And, we disagree with defendant's contention that our holding in *People v. Beasley, supra,* requires that we find plain error here.

In *Beasley* and here, the crimes were separated by time and location. However, Beasley's medical expert testified that "one of the indications of Beasley's insanity was his self-righteous vindictiveness toward drug dealers.... The jury could have concluded that Beasley was insane as to the assault against [the drug dealer], but perhaps not as to the attacks upon his companion." *People v. Beasley,* 43 Colo.App. at 490, 608 P.2d at 837.

Here, defendant has not identified any evidence from which a jury could find that he was sane at the time of one or more, but not all, of the alleged crimes. Further, the jury was given various instructions referring to the issue of sanity during the commission of each crime charged. In these circumstances, there was no plain error in submitting the single sanity verdict form. *See People v. Martin, supra.*

## V.

The defendant's final contention is that the trial court erred when it imposed consecutive sentences for the violent crime charges because it erroneously believed that these sentences were mandated by § 16–11–309, C.R.S. (1986 Repl.Vol. 8A). We conclude the case should be remanded for reconsideration of sentencing for aggravated robbery.

The record reflects that the court initially imposed a sentence of eighteen years on each of the aggravated robbery and crime of violence charges. These sentences were to run concurrently with each other and the conspiracy charges, and consecutively to the two simple robbery charges. The prosecutor then stated: "[T]he court is mandated to run the crimes of violence consecutive [sic] to each other." The court in response altered the sentences for aggravated robberies and crimes of violence to twenty years for each robbery, to run consecutively to each other and concurrently with the simple robbery and conspiracy convictions.

Consecutive sentences must be imposed when a person is convicted of two or more separate crimes of violence arising out of the same incident. Section 16–11–309(1)(a), C.R.S. (1986 Repl.Vol. 8B). "Incident" has been defined in the context of this statute to mean an occurrence taking place as a part of a larger continuum or a happening or related group of happenings subordinate to a main plot. An incident may logically include a series of acts committed in close proximity or a chain of events forming a part of a schematic whole. *People v. Beyer*, 768 P.2d 746 (Colo.App.1988).

Here, the trial court made no determination whether the two aggravated robberies were separate incidents. Nor is there any explanation why the sentences for these robberies were changed from eighteen to twenty years in response to the prosecutor's comment. The cause is therefore remanded for the court to determine whether consecutive sentencing for the two aggravated robberies is mandatory and, if not, whether it is appropriate, and to impose sentences in light of those considerations. *See People v. Tijerina*, 632 P.2d 570 (Colo. 1981).

The judgments are affirmed. The sentences on the counts of aggravated robbery and crime of violence are vacated, and the cause is remanded for imposition of new sentences.

PLANK, J., concurs.

METZGER, J., specially concurs.

Judge METZGER specially concurs.

Because I agree with the result in part III of the majority opinion, but disagree with the analysis, I specially concur.

Defendant has contended that the two verdicts of not guilty of aggravated robbery are inconsistent with the verdicts of conspiracy to commit aggravated robbery. The majority concluded that defendant is precluded from raising this issue on appeal because defense counsel "deliberately acquiesced in the response which the court provided to the jury's question [on the issue]."

I disagree with this rationale for two reasons. First, contrary to the majority's assumption, the record provides no basis for us to determine whether defense counsel's acquiescence was a deliberate strategic maneuver or not. Second, and more importantly, the court's answer was legally correct. Therefore, even if defense counsel had objected to the proposed answer to the jury's inquiry, the objection would be unfounded.

Consequently, I do not believe that, under the circumstances here, we can impute error to defense counsel's actions.

Instead, I would merely reject defendant's argument concerning inconsistent verdicts.

The uncontradicted evidence shows that two establishments were robbed at gunpoint by someone other than defendant, that the individuals who committed those robberies were confederates of defendant, and that defendant and these two confederates had engaged in a robbery crime spree

in the Colorado Springs area for several weeks. Defendant, in a confession to a police detective, described the gun used in each of these robberies; that description was independently verified by both victims and the gun was recovered from defendant's confederates.

Defendant also testified at trial that he and his confederates had planned to rob each of the establishments. He stated that, for these two robberies, he drove the getaway car. There was no evidence corroborating this assertion.

The jury could have reasonably believed that defendant agreed with his confederates to commit the two robberies and that, based on the gun and the victims' identifications, he was guilty of conspiracy. However, because defendant's statement that he drove the getaway car was uncorroborated, the jury could have concluded that he did not aid, abet, or encourage the commission of these crimes. Thus, the verdicts of guilty of conspiracy to commit these two robberies are not inconsistent with the verdicts of not guilty of aggravated robbery on a complicity theory.

Accordingly, I would reject defendant's contention to the contrary.