## No. 18,645.

JOHN GARLAND HARRIS, ET AL. *v.* PEOPLE OF THE
STATE OF COLORADO.

(335 P. [2d] 550)

Decided February 24, 1959.    Rehearing denied March 9, 1959.

Messrs. CADDES & CAPRA, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. NORMAN H. COMSTOCK, Special
Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

Plaintiffs in error, hereinafter referred to as defendants, together with one Goff, were accused of committing an assault with a deadly weapon upon one Donna L. McDermott with intent to commit a bodily injury upon her. A similar charge was filed against defendants in which James Russell was the alleged victim. The two cases were consolidated for trial by consent of the parties. They waived a trial by jury and having entered a plea of not guilty the consolidated cases were tried to the court. Defendants were adjudged guilty and sentenced to a term of not less than three nor more than five years in the state penitentiary. The third defendant, Goff, was tried separately.

But one question is involved in this review on writ of error, namely: Was there sufficient evidence, as a matter of law, to sustain the judgment?

We answer the question in the affirmative. The two defendants and Goff were driving an automobile at about 11:00 P.M. on September 5, 1957, and stopped in front of a residence in which Mike Mahler was visiting Donna McDermott. Her stepfather, one James Russell, had retired for the night. He was aroused by defendants who had started to steal the hubcaps from the automobiles belonging to Mahler and Russell which were parked in front of the house. Russell, Mahler and Donna rushed outside, whereupon Goff fled down the street and the two defendants drove off. Russell, Mahler and Donna took up the chase in Mahler's car. Defendants eluded their pursuers who returned to the residence and about that time defendants again drove by the house for the purpose of picking up Goff, and the chase began again.

Russell, Mahler and Donna caught up with the three suspects in an alley at a point where the suspects' automobile broke down. Mahler stopped his car in the alley eight or ten feet from the crippled car. He and the other

two occupants got out of their car and demanded the hubcaps which had been taken. Defendants denied having any hubcaps. They invited Mahler to look inside their car. He made the assertion that it was a matter for the police to decide. Thereafter the facts as found by the trial court are that Mahler went back and started to get in his car; Donna and her stepfather had already returned to the car. Defendants thereupon seized Mahler and, as he stated: "They pulled me out of the car, and felt like they were slugging me in the chest, and Donna got out and she started screaming, and the next thing I knew they were running away from us." Mahler suffered knife cuts on the wrist, the elbow and several cuts on the chest requiring hospitalization, and about "22 or 23 stitches altogether" were required to close his knife wounds.

While the two defendants were thus assaulting Mahler, Goff seized Donna and stabbed her in the abdomen, and Russell, who came to her aid, fought with Goff. Russell also received serious knife wounds. Donna and Russell were hospitalized for their injuries. It is admitted that the two defendants did not personally inflict any of the injuries upon either Donna or Russell, and that the assault upon them was actually committed by their confederate Goff during the time the two defendants were assaulting Mahler.

It is the contention of counsel for defendants that under these facts defendants are not accountable for the assault actually committed by Goff. The Attorney General contends that defendants are accessories and were properly convicted as such.

The trial court commented as follows at the conclusion of the evidence:

"This man went back to get in his car. The lady had already gotten in the car, and Mr. Russell was in or about to get in the car, when two men, apparently these two defendants here, grabbed this young man Mike. Of course he was getting injured. These defendants are

not charged in this case with assault on Mike, they are charged with assault on Donna and Mr. Russell. It would be hard to find a much clearer case of defendants aiding and abetting; they kept Mike, the younger man, somewhere between the three, they kept him off and Mr. Russell from interference.

"Why was Donna screaming? The incentive and natural thing for a woman to do. The best defense they have in a critical situation such as this, and her screams had to be hushed, because an alarm was being given, and as human nature being what it is, there would be other people coming to assist.

"Altogether, I am compelled to find these two defendants guilty in both cases of assault with a deadly weapon."

The pertinent statute, C.R.S. 1953, 40-1-12, provides in material part as follows:

"An accessory is he who stands by and aids, abets, or assists, or who, not being present, aiding, abetting or assisting, has advised and encouraged the perpetration of the crime. He who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly. * * * "

In *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5, this court said, inter alia:

"That an accessory may be charged as a principal has been expressly determined by this court. In *Noble v. People,* 23 Colo. 9, 45 Pac. 376, the court quoted with approval the following from *Spies et al. v. People,* 122 Ill. 101, 12 N.E. 915, 3 Am. St. 320: 'This statute abolishes the distinction between accessories before the fact and principals, by it all accessories before the fact are made principals. As the acts of the principal are thus made the acts of the accessory, the latter may be charged as having done the acts himself, and may be indicted and punished accordingly.' And in *People v. Zobel,* 54 Colo. 284, 130 Pac. 837, it was said: 'In this state an accessory is guilty the same as a principal, and may be indicted

and punished as a principal.' These declarations are sustained by reason and authority. If accessories are under the law deemed and considered as principals, then they are principals in so far as the indictment, trial and punishment are concerned. The authorities, where statutes similar to the Colorado statute are involved, seem to uniformly sustain the principle of those cited from this court."

In *McKenna v. People,* 124 Colo. 112, 235 P. (2d) 351, this court applied the rule that is controlling here. In that case an officer of the law was shot by one Valenzuela while he and defendant McKenna were fleeing from the scene of a robbery they had committed. Concerning the guilt of the accessory, McKenna, this court said, inter alia:

"It is certain that, considering all the evidence, the jury believed, and we think properly, that defendant did cooperate with Valenzuela in the commission of unlawful acts; that he did aid, abet and assist Valenzuela in the attempt to escape and in the commission of the murder of the patrolman, whom they felt might prevent their escape. It is not necessary that persons implicated in crime shall have reached a formal or distinct agreement either orally or in writing as to the exact procedure in the accomplishment thereof. *Bacino v. People,* 104 Colo. 229, 90 P. (2d) 5. That one charged as accessory to crime had knowledge of the principal's intention, coincided therewith and cooperated in his efforts, may be established by reasonable inference from other established facts and circumstances. 'Whether or not the testimony is sufficient to justify a conviction is for the jury.' *Mulligan v. People, supra."*

In the case at bar it is certain that defendants and Goff agreed to embark upon an enterprise of stealing hubcaps from automobiles, and that they did steal at least one hubcap from the car belonging to one of their victims. They admitted to police officers that the stolen hubcap was thrown away during the chase; all three

were pursued in their effort to escape and upon being overtaken and confronted by their pursuers who demanded return of the hubcap they denied having it. The victims of the assault returned to their car and were about to enter it when Goff and the two defendants attacked them. All three of their victims were severely cut and beaten, after which the attackers fled. It conclusively appears that the assault and use of knives was concerted and participated in by all three of the thieves for the purpose of frustrating their detection and avoiding capture.

There is no merit to the argument advanced to the effect that neither of the defendants had any specific intent to commit bodily injury on the person of either Donna or Russell, and that since they did not personally inflict the stab wound upon her they cannot be held accountable. The trial court committed no error in holding the defendants responsible as accessories.

The judgment is affirmed.