The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Michael Lee SWANSON, Defendant-Appellant.

No. 80 SA 125.

Supreme Court of Colorado, En Banc.

Dec. 7, 1981.

---

6. *See* note 4, *supra.*

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Harvey Palefsky, Deputy State Public Defender, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant Michael Lee Swanson appeals his conviction in the district court of El Paso County based on jury verdicts of guilty to counts of aggravated robbery, section 18–4–302(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), first-degree kidnapping, section 18–3–301(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), and crime of violence, section 16–11–309(2), C.R.S.1973 (1978 Repl. Vol. 8).[1] The de-

---

1. This case was transferred here from the Court of Appeals under sections 13–4–110(1)(a)

fendant contends that the evidence was insufficient to sustain his conviction, that the district attorney improperly commented on the evidence, and that the verdict form for crime of violence was improper because it omitted the specific finding required by statute. We disagree, and affirm his conviction.

On the evening of February 25, 1978, the defendant, and his co-defendant, Albert Csee, were hitch-hiking on Nevada Avenue in Colorado Springs. A van driven by John Seabloom stopped to pick them up. Because a passenger, Terry Cook, occupied the other front seat, one of the hitch-hikers sat on the bed in the back of the van and the other knelt behind the front seats. The chief evidentiary issue at trial and on appeal is the identity of the hitch-hiker who knelt behind the front seat.

The hitch-hikers said they wanted to go to the Peppermint Lounge. Several blocks north of the Lounge, the hitch-hiker immediately behind the front seats put a pistol against Seabloom's head and ordered him to drive down Route 115 toward Fort Carson. When Cook laughed at the order, the gunman raked the pistol across the back of Cook's head. Cook testified that he never looked at the gunman although, when ordered to do so, he handed back his wallet containing $2.00. The hitch-hikers inquired whether there were any woods along the road, and after passing the gate to Fort Carson, directed Seabloom to stop the van, hand the keys back over his shoulder, and leave. As Seabloom ran from the van, the gunman followed him out the driver's door and fired a shot in his direction. The gunman then went to the passenger door of the van and ordered Cook to leave. After the

hitch-hikers drove away, Seabloom and Cook stopped a highway patrolman who broadcast a description of the van.

An El Paso County deputy sheriff spotted the van near Fountain about twenty minutes later. The deputy sheriff stopped the van, and the co-defendant, Csee, got out of the driver's side. The defendant leapt from the passenger's side and ran. After the police caught him, they found a pistol under the driver's seat.

Both the defendant and Csee were charged with aggravated robbery and first-degree kidnapping. Because Csee confessed to the police that he was the gunman, he alone was charged with crime of violence. The defendant failed to appear for trial on June 12, 1978, and Csee was tried and convicted in his absence of aggravated robbery, second-degree kidnapping, and crime of violence. The defendant was arrested on September 11, 1978. On November 15, 1978, the district attorney filed a motion to amend the information filed against the defendant to add a charge of crime of violence. The defendant opposed the district attorney's motion because Csee had previously been convicted of crime of violence and only one gun was involved. The trial court refused to consider the substance of the defendant's opposition and instead ruled that the amendment had been made sufficiently in advance of trial to give the defendant time to defend against the charge. The jury found the defendant guilty of aggravated robbery, first-degree kidnapping and crime of violence on January 25, 1979.[2]

On appeal, the defendant argues that the evidence was insufficient to demonstrate his participation in any of the crimes

and 13–4–102(1)(b), C.R.S.1973, because the defendant challenged the constitutionality of section 18–3–301, C.R.S.1973 (1978 Repl. Vol. 8) as applied. He alleged that the distinction between first-degree kidnapping under section 18–3–301 and second-degree kidnapping under section 18–3–302, C.R.S.1973 (1978 Repl. Vol. 8) is not sufficiently apparent for the law to be intelligently and uniformly applied. The differences between first-degree kidnapping and second-degree kidnapping are set out in *People v. Bridges*, Colo., 612 P.2d 1110 (1980), and the

defendant's constitutional claim is without merit. Section 18–3–302 has been amended since this case was tried. *See* Colo.Sess.Laws 1981, ch. 214, 18–3–302 at 983.

2. The trial court sentenced the defendant on both the aggravated robbery and kidnapping counts to the penitentiary for a term of not less than ten nor more than twenty-five years, five years to be without suspension for crime of violence, the terms to be served concurrently.

charged. Although he admits his presence in the van, he maintains that he was intoxicated and passed out on the bed in the back. He specifically asserts as insufficient the evidence that he forced Seabloom and Cook to make a concession or give up anything of value in order to secure their release as required under the first-degree kidnapping statute. The defendant also argues that Csee's conviction collaterally estops the prosecution from proving that he committed the crime of violence offense. The defendant claims that the district attorney's statements during closing argument that Csee was a liar were expressions of the district attorney's personal belief and improper comments on the evidence. Finally, the defendant challenges the crime of violence conviction as improper because the jury received only a general verdict form.

We determine that the evidence is sufficient to support the jury's verdict of guilt as to each count; that the prosecution was not collaterally estopped from charging the defendant with crime of violence because the definition of crime of violence does not require that the defendant personally possess and use a deadly weapon during the commission of the specified crimes; that the defendant did not properly preserve his objection to the district attorney's comments concerning Csee's credibility; and that the statutory requirement of a specific finding to support the jury's verdict of guilt of crime of violence need not be applied to this case. For these reasons, we affirm the defendant's conviction.

## I.

■ The defendant asserts that the only direct evidence of his participation in the acts which serve as the basis for the aggravated robbery and kidnapping convictions was the identification by Seabloom of the defendant as the hitch-hiker who knelt behind him in the van and wielded the pistol. He questions the identification based only on Seabloom's glimpse of him in the poorly lighted van and points to Csee's admission that he was the gunman. While there is no question that the defendant entered the van with Csee and participated to some degree in the subsequent events, there was a direct conflict between Csee's and Seabloom's testimony. However, since Csee admitted at the defendant's trial that he fabricated his earlier testimony, the jury could reasonably have resolved the conflict between Csee's and Seabloom's testimony against Csee based on Csee's apparent lack of credibility. It is the province of the jury to determine the credibility of witnesses and the weight to be given to the evidence. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973). In addition, shortly after the crime Seabloom identified the defendant, not Csee, as the gunman from a photo lineup which included photographs of both Csee and the defendant.

## II.

The defendant also argues that the evidence is insufficient as a matter of law to establish first-degree kidnapping. The first-degree kidnapping statute, section 18–3–301, C.R.S.1973 (1978 Repl. Vol. 8), provides:

(1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:

(a) Forcibly seizes and carries any person from one place to another.

In *People v. Bridges*, Colo., 612 P.2d 1110, 1116 (1980), we described the relationship between the statutory requirements of intent to force a concession and movement of the victim, stating:

[f]or first-degree kidnapping, the prosecution must prove, in addition to movement, that the *intent* of the defendant is to force the victim to make a concession or give up a thing of value *in order to secure release*. Circumstantial evidence of such intent may be derived from an examination of the amount and character of the movement surrounding the robbery, taking into account, for example,

the time of detention, the distance, any changed environmental factors, whether the commission of the underlying crime and the movement were simultaneous, and the consistency of the defendant's actions with an independent intent to kidnap. [Emphasis in original.]

A key issue in our analysis in *Bridges* was whether the movement of the victim in that case was simply "incidental" or "substantial in nature," and whether the movement would "substantially increase the risk of harm over and above that necessarily present in the crime . . . itself." *Id.*

■ The record here discloses that the defendant and Csee, by threatening Seabloom and Cook with a pistol, forced them to drive a substantial distance. Ultimately, in order to secure their release unharmed, they were forced to leave the van at an isolated spot chosen by the defendant and Csee. The risk of harm was substantially greater in the uninhabited area than it was where Seabloom and Cook picked up the hitch-hikers. As we stated in *Bridges, supra*, intent may be inferred from evidence of the amount and character of movement. The evidence establishes the intent necessary for first-degree kidnapping. *People v. Morgan*, Colo., 637 P.2d 338 (1981); *People v. Chatfield*, Colo., 612 P.2d 516 (1980).

### III.

The defendant asserts that the trial court erred in allowing the prosecution to put evidence before the jury that he personally possessed and used the pistol during the commission of the aggravated robbery and kidnapping because Csee had already been convicted of crime of violence based on possession and use of the pistol during the same episode. The defendant argues that the evidence would have been insufficient

to sustain the charge of crime of violence had the prosecution been foreclosed from proving that he personally possessed and used the pistol. He relies upon the doctrine of non-mutual collateral estoppel, arguing that the prosecution should have been precluded from proving an ultimate fact (here the identity of the gunman) in a manner inconsistent with a prior jury verdict.

We note at the outset that defendant's collateral estoppel argument is premised upon a faulty interpretation of section 16–11–309(2), C.R.S.1973 (1978 Repl. Vol. 8), namely, that the statute applies only to a defendant who personally used or possessed and threatened to use a deadly weapon during the commission of a crime. Section 16–11–309(2) defines "crime of violence" as a

crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission of a crime of murder, first or second degree assault, kidnapping, sexual assault, robbery, first degree arson, first or second degree burglary, escape, or criminal extortion, or during the immediate flight therefrom . . . .

Section 18–1–901(3)(e), C.R.S.1973 (1978 Repl. Vol. 8), defines "deadly weapon" as "any firearm . . . which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." [3]

The statute does not indicate that the ordinary principles of criminal complicity embodied in section 18–1–603, C.R.S.1973 (1978 Repl. Vol. 8) do not apply. Section 18–1–603 provides:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense. [4]

---

3. This section was amended after the defendant's conviction. See section 18–1–901(3)(e), C.R.S.1973 (1980 Supp.).

4. The accessory definition refers to an "offense" while the statute defining "crime of violence" expressly denominates it as a "crime."

Under section 18–1–104(1), C.R.S.1973 (1978 Repl. Vol. 8), the two terms are synonymous and mean "a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed."

**50**

An accessory to a crime may be charged as a principal where the offense committed was sexual assault, *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978), or assault with a deadly weapon, *Harris v. People*, 139 Colo. 9, 335 P.2d 550 (1969). We see no reason to treat crime of violence differently from these offenses. *See United States v. Brant*, 448 F.Supp. 781 (W.D. Pa.1978); *Jemison v. State*, 633 P.2d 753 (Okla.App.1981). The mandatory sentence for conviction of crime of violence is based on a recognition of the increased potential for harm arising from the manner in which the crime was committed. This heightened danger is present regardless of which robber held the gun. We conclude therefore that an accessory to crime of violence may be charged, tried and punished as a principal.[5]

The trial court instructed the jury on the elements of complicity under section 18–1–603, but a hand-written addition to the jury instruction reads, "This instruction does not apply to Count 3, Crime of Violence."[6] Because we determine the principles of complicity apply to a crime of violence, the hand-written sentence added to the instruction was erroneous. The erroneous jury instruction was harmless error however. It worked in the defendant's favor by requiring, unnecessarily, that the jury find evidence sufficient to prove beyond a reasonable doubt that the defendant personally used, or possessed and threatened to use, a deadly weapon. This requirement imposed a more demanding standard of culpability than the correct standard.

The defendant's collateral estoppel argument is that because Csee had already been convicted of crime of violence based on possession and use of the pistol during the same episode, the prosecution should be precluded from attempting to prove that the defendant had the pistol.[7] The defendant did not object at trial to the admission of evidence tending to prove that he used, or possessed and threatened to use, a deadly weapon; nor did he lay a foundation for a collateral estoppel argument by including in the record of this case the evidence and jury instructions which served as the basis for Csee's conviction of crime of violence.

We need not address the collateral estoppel issue because we conclude that complicity principles apply to crime of violence. Under the proper legal standard, the defendant could have been convicted on crime of violence charges irrespective of who actually used the pistol. Therefore the prosecution's attempt to prove that the defendant had the pistol was permissible to show that a deadly weapon was used in the crime.

5. When a defendant is charged with aggravated robbery, a preliminary hearing on the crime of violence charge is not required. *Brown v. District Court*, 194 Colo. 45, 569 P.2d 1390 (1977). The application of complicity principles to crime of violence does not mean that it is a substantive offense requiring a preliminary hearing.

6. The handwriting appears to be that of the judge although it is not identified. Neither the prosecution nor the defendant objected to this instruction at trial. *See* Crim.P. 30. On appeal, the People "do not concede that C.R.S. 1973, 16–11–309 indicates that one commits a crime of violence only if he personally uses or possesses and threatens the use of a deadly weapon."

7. The doctrine of collateral estoppel requires that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Nonmutual collateral estoppel, in which issue preclusion is asserted by a party not governed by the initial factual determination, was first applied by the United States Supreme Court in a civil context in *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Recently, the Supreme Court declined to extend the doctrine of nonmutual collateral estoppel to a criminal case in *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). There, the court rejected the argument of an accessory that certain charges against him should be dismissed because the principal charged with these offenses had been acquitted. No constitutional issues are raised by relitigation of factual issues where a different defendant is involved, since double jeopardy is implicated only where relitigation involves the same defendant. *Standefer v. United States, supra* at n. 16. *Compare Ashe v. Swenson, supra.*

## IV.

During closing argument the prosecutor, referring to Csee's admissions that he had lied in testimony at his own trial, labelled Csee a "liar." The defendant asserts that these statements constitute reversible error. The defendant characterizes the comments as an expression of the district attorney's personal belief and, as such, improper comment on the evidence. Defense counsel, however, made no contemporaneous objection and did not move for a mistrial. The defendant did cite the statements as error in his motion for a new trial.

Expressions of a prosecutor's personal belief in the truth or falsity of testimony are improper because they invade the jury's province to determine credibility of the witnesses. *People v. Wright*, 182 Colo. 87, 511 P.2d 460 (1973); *A.B.A. Standards Relating to the Prosecution Function and the Defense Function*, § 3–5.8(b) (1980). To the degree the comments may have been improper, the trial court was in the best position to determine their impact on the jury. Without an objection or a motion for mistrial, the trial court did not have an opportunity to rule on the matter or to give the jury a cautioning instruction. The alleged prosecutorial misconduct was not so egregious as to constitute plain error within the meaning of Crim.P. 52(b) so that we may consider it on appeal absent a contemporaneous objection. *People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978).

## V.

The defendant's appellate reply brief challenged for the first time the trial judge's submission to the jury of a general verdict form without requiring a specific finding that the accused did or did not use, possess or threaten to use a deadly weapon during the commission of the crimes charged. Section 16–11–309(5), C.R.S.1973. The defendant relies on *People v. Grable*, 43 Colo.App. 518, 611 P.2d 588 (1979), in which the Court of Appeals held that section 16–11–309(5) requires the trial court to submit special interrogatories to the jury. *Grable* was decided after this defendant's trial.

Here, as in *Grable*, the jury was separately instructed on the elements of crime of violence and received a separate general verdict form for crime of violence. Defense counsel accepted the verdict forms, and the defendant has not pointed to any harm to him from the form of the verdict. Therefore, we decline to apply *People v. Grable, supra*, retroactively in this case. *See Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1973); *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980) for the test to be applied in determining the retroactivity of new rules of criminal procedure.

Judgment affirmed.