Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 14, 2020

**2020 CO 87**

**No. 19SC396, *People in the Interest of B.D.*—Complicity—Sentence Enhancer—
Statutory Interpretation—Due Process.**

In this opinion, the supreme court reviews the judgment of a division of the
court of appeals, which reversed the defendant's adjudication and sentence for
theft from an at-risk person as a complicitor. The supreme court holds that the
requirement that a complicitor hold a dual mental state does not extend to
sentence enhancers based on the nature of the offense. The dual mental state
standard requires that the complicitor intended for the principal to complete the
elements of the criminal offense and to have been aware of all the circumstances
attending those elements. Based on the plain language of the at-risk victim
provision here, the supreme court concludes that it is a sentence enhancer. Thus,
liability for theft from an at-risk victim as a complicitor, does not require that the
complicitor was aware of the at-risk victim's presence to trigger the sentence
enhancing provision.

The judgment of the court of appeals is reversed.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2020 CO 87

---

### Supreme Court Case No. 19SC396
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1924

#### Petitioner:

The People of the State of Colorado,

#### In the Interest of

#### Respondent:

B.D.

---

#### Judgment Reversed
*en banc*
December 14, 2020

---

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Gabriel P. Olivares, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
The Noble Law Firm, LLC
Tara Jorfald
*Lakewood, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 Several boys broke into two homes, one of which was owned by a man old enough to be considered an "at-risk" victim. When that man returned home, he happened upon one of the boys holding the meager spoils of an ill-conceived, juvenile burglary. The others, including B.D., remained outside, oblivious to the elderly man's arrival. All the boys quickly fled, leaving in their wake an undoubtedly startled victim and, perhaps less predictably, a legal conundrum about complicitor liability.

¶2 In this opinion, we address the scope of complicitor liability for a fact that aggravates the punishment for theft; namely, an at-risk victim's presence. Based on the plain language of the controlling statutes, we conclude that a complicitor need not be aware that an at-risk victim is present because it is a strict liability sentence enhancer and not an element of the offense. Accordingly, we reverse the judgment of the court of appeals and remand the case for the district court to reinstate the adjudication and sentence.

## I. Facts and Procedural History

¶3 B.D. and two of his friends broke into two homes, stealing several items. At the second home, only one of the boys, K.K., was still inside when the seventy-seven-year-old owner returned. The boys fled, and the homeowner called the police. Officers soon found the three boys walking nearby. The homeowner identified K.K., and the boys were arrested.

2

¶4 B.D. was charged with one count of theft and two counts of second degree burglary. He was also charged with one count of theft in the presence of an at-risk person because the victim was over seventy years old. *See* § 18-6.5-102(2), C.R.S. (2020) ("'At-risk adult' means any person who is seventy years of age or older . . . ."). After a bench trial, the juvenile magistrate adjudicated B.D. delinquent on all counts.

¶5 On appeal, the division, relying on *People v. Childress*, 2015 CO 65M, ¶ 29, 363 P.3d 155, 164, concluded that to be liable for theft in the presence of an at-risk victim, the prosecution had to prove that B.D. "had an awareness of [the at-risk victim's presence], even if such an awareness is not necessary to hold the principal accountable." *People in Int. of B.D.*, 2019 COA 57, ¶ 39, __ P.3d __. And because no such evidence was presented, the evidence was insufficient to sustain B.D.'s adjudication. *Id.* at ¶ 40.

¶6 We then granted the prosecution-sought certiorari review.[1]

---

[1] We granted certiorari to review the following issue:

> Whether the court of appeals erred in holding that, before a court can impose an enhanced sentence under the at-risk person statute, there must be evidence that the complicitor had an awareness of the fact that an at-risk person was present during the commission of the offense.

## II. Analysis

¶7 After identifying the standard of review and revisiting familiar principles of statutory interpretation, we address the question before us. We approach that question by breaking it into two parts: (1) whether *Childress*'s "dual mental state" requirement for complicity extends to sentence enhancers or is limited to the elements of the offense, and (2) whether the at-risk victim provision here is a sentence enhancer or an element.[2]

## A. Standard of Review and Principles of Statutory Interpretation

¶8 Both parties have framed the question before us as a challenge to the sufficiency of the evidence supporting B.D.'s adjudication. We review the record de novo to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient both in quantity and quality to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *McCoy v. People*, 2019 CO 44, ¶ 63, 442 P.3d 379, 392. Determining the sufficiency of the evidence here requires us to review the

---

[2] This opinion addresses sentence enhancers based on the nature of the offense rather than sentence enhancers specific to the principal, such as criminal history.

division's interpretation of the relevant statutes, which we also do de novo. *See Chavez v. People*, 2015 CO 62, ¶ 7, 359 P.3d 1040, 1042.

¶9 In interpreting statutes, our primary goal is to discern legislative intent. *Carrera v. People*, 2019 CO 83, ¶ 17, 449 P.3d 725, 729. And because it is the legislature's prerogative to define crimes and prescribe the relevant punishments, *Vensor v. People*, 151 P.3d 1274, 1275 (Colo. 2007), we begin with the statutes' plain language, giving words and phrases their plain and commonly understood meanings, *Carrera*, ¶ 17, 449 P.3d at 729. If the language is clear, we apply it as written. *Id.* at ¶ 18, 449 P.3d at 729.

¶10 With these concepts in mind, we first turn to Colorado's complicity statute, and we examine how it applies to sentence enhancers.

## B. Whether the Dual Mental State Requirement for Complicitors Applies to Sentence Enhancers

¶11 Under the complicitor liability theory, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603, C.R.S. (2020).

¶12 This court has interpreted the complicity statute to require that a complicitor hold a dual mental state; meaning, the complicitor must have both

5

(1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct, and (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question.

*Childress*, ¶ 29, 363 P.3d at 164. By "circumstances attending the act or conduct," we mean "those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission." *Id.* Thus, under *Childress*, complicitor liability requires awareness of all circumstances necessary for the *commission* of the offense. *See Butler v. People*, 2019 CO 87, ¶ 12, 450 P.3d 714, 717 ("Assessing whether a defendant may be found liable as a complicitor therefore requires a determination of the requisite elements of the principal's offense.").

¶13 An individual *commits* an offense when he completes all the statutory elements of that offense. *See Doubleday v. People*, 2016 CO 3, ¶¶ 23–24, 364 P.3d 193, 197 (discussing that proving the commission of a crime "requires the prosecution to prove beyond a reasonable doubt each of the elements of that crime").

¶14 Sentence enhancers attach only after the prosecution has proven that the defendant committed the offense. *People v. Eggers*, 585 P.2d 284, 286 (Colo. 1978) (concluding that sentence enhancers are "triggered only after a defendant has been found guilty of the substantive crime" (quoting *Brown v. Dist. Ct.*, 569 P.2d 1390,

6

1391 (Colo. 1977))), *superseded on other grounds by statute*, Ch. 211, secs. 1 & 2, §§ 8-1-105(9)(a) & 16-11-309(1), 1981 Colo. Sess. Laws 970–71.

¶15 Accordingly, because sentence enhancers are not elements of the offense, *Childress*'s dual mental state requirement does not extend to them. *See Garcia v. People*, 2019 CO 64, ¶¶ 30–32, 445 P.3d 1065, 1070 (concluding that where a sentence enhancing provision contains no mens rea requirement, none is required for the sentence enhancer to apply); *Whitaker v. People*, 48 P.3d 555, 559 (Colo. 2002) (interpreting the relevant statutes as setting "forth the drug quantity separately from the elements, with no mens rea requirement and with the apparent design of separating the applicable punishment from the creation and definition of the offense").

¶16 B.D. asserts that because the statute makes a complicitor accountable only for the principal's "criminal offense," a complicitor can't be subject to sentence enhancers because they aren't part of the offense. However, because complicity is a theory of liability, not an offense, once a defendant is found guilty of the underlying offense, he "is legally accountable as principal . . . for [the] criminal offense," § 18-1-603, including any sentence enhancers related to the nature of the offense. *See People v. Ramirez*, 997 P.2d 1200, 1207 (Colo. App. 1999) ("[P]unishment is imposed for the underlying crime and not for complicity. . . . Thus, an offense exists to which the [sentence enhancement] provisions may

7

apply."), *aff'd by an equally divided court*, 43 P.3d 611 (Colo. 2001) (mem). The complicity statute puts B.D. on equal footing with his principal regarding the circumstances accompanying the commission of the offense, which then allows any relevant sentence enhancers to apply by their own force. Thus, B.D. is liable as a complicitor if he intended to aid in the theft and was aware of the circumstances constituting the elements of the offense, notwithstanding his ignorance of any sentence-enhancing facts.

¶17    Next, we turn to the statutes at issue here to determine whether the at-risk victim provision is an element that B.D. needed knowledge of under the complicity statute or is instead a strict liability sentence enhancer.

### C.  Whether the At-Risk Victim Provision Is a Sentence Enhancer or an Element

¶18    The plain language and structure of the controlling statutes make clear that the legislature intended the at-risk victim provision to be a sentence enhancer.

¶19    Section 18-4-401(1), C.R.S. (2020), sets forth the ways an individual can commit theft. As relevant here, an individual commits theft "when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization . . . and . . . [i]ntends to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a). Subsection (2) then provides for increasing penalties based on the value of the stolen items. Thus, subsection (1) contains the essential elements that a jury must

8

find to convict a defendant of theft, while subsection (2) provides the penalties a judge may impose based on the jury's findings.

¶20 In a separate article of the criminal code, the legislature also imposes greater penalties when the theft happens in the presence of an at-risk victim: "Any person who commits theft, and commits any element or portion of the offense in the presence of the victim, . . . and the victim is an at-risk person, . . . commits" a felony. § 18-6.5-103(5), C.R.S. (2020).

¶21 This statutory structure creates a clear distinction between the elements of theft and the at-risk victim provision. *See Garcia*, ¶¶ 36–38, 445 P.3d at 1070–71; *Whitaker*, 48 P.3d at 558–60. Therefore, based on the statutes' plain language and structure, we conclude that the at-risk victim provision is a sentence enhancer.

¶22 And although we need look no further to discern the legislature's intent, the express purpose of the at-risk victim statute provides additional support for our interpretation: "The general assembly . . . finds that penalties for specified crimes committed against at-risk persons should be more severe than the penalties for the commission of the same crimes against other members of society." § 18-6.5-101, C.R.S. (2020). This is because at-risk victims "are more impacted by crime than the general population because they tend to suffer great relative deprivation," and "[t]hey are far more susceptible than the general population to the adverse long-term effects of crimes committed against them." *Id.* Because the statute's purpose

9

is not necessarily aimed at deterrence but at accountability, it does not matter whether the individual committing the offense is unaware that an at-risk victim is present—he committed the crime and is therefore responsible for the fact that the harm caused is greater than intended. *See Vega v. People*, 893 P.2d 107, 117 (Colo. 1995) ("The aggravating circumstances . . . bear on punishment, rather than on the offense . . . because the underlying offense causes the same harm whether [the defendant is aware the aggravating circumstances are present or not]."); *Ramirez*, 997 P.2d at 1207 ("There is no reason why a defendant, whether a principal or a complicitor, who knowingly traffics in drugs, should not bear the risk that the quantity involved is greater than that which he or she was aware, and that, therefore, such conduct might be more harmful than intended.").

¶23    The legislature's express desire to increase punishments when at-risk people are victimized reinforces our conclusion that it intended the at-risk victim provision to constitute a strict liability sentence enhancer rather than an element of the offense.

¶24    B.D. counters that the presence of an at-risk victim must be an element of the offense of theft from an at-risk person because the U.S. Supreme Court has said that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element." *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000); *see Alleyne v.*

10

*United States*, 570 U.S. 99, 107–08 (2013); *United States v. O'Brien*, 560 U.S. 218, 224 (2010). But the lesson from *Apprendi* and its progeny is that judges may not impose sentences beyond the statutorily prescribed range based on findings by a preponderance of the evidence. 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). These cases did not create a universal rule dictating when sentence enhancers become elements. Instead, they "made clear that for purposes of the Sixth Amendment guarantee of jury determinations, it is inconsequential whether a required fact is organized . . . as a sentencing factor or as an element" if that fact increases the range of potential penalties. *Lewis v. People*, 261 P.3d 480, 483 (Colo. 2011). So our holding that, "for the purposes of the jury trial requirement," a sentence enhancer sometimes functions as an element for Sixth Amendment purposes, *Lopez v. People*, 113 P.3d 713, 722 (Colo. 2005), does not dictate the interaction between Colorado's complicity and at-risk victim statutes.[3]

---

[3] In the interest of not conflating related issues, we set forth the foregoing plain language analysis without reference to the lines of cases discussing sentence enhancers and elements in other contexts; namely, the Sixth Amendment right to a jury trial (*Apprendi* and *O'Brien*) and double jeopardy/merger (*People v. Leske*, 957 P.2d 1030 (Colo. 1998), and *Armintrout v. People*, 864 P.2d 576 (Colo. 1993)).

¶25 Here, there is no *Apprendi* problem because a juvenile magistrate, acting as factfinder following a bench trial, found the essential elements of theft and the presence of the at-risk victim beyond a reasonable doubt. *See* § 19-1-108(1), C.R.S. (2020) ("The juvenile court may appoint one or more magistrates to hear any case or matter under the court's jurisdiction, except where a jury trial has been requested pursuant to section 19-2-107 . . . ."); *Blakely v. Washington*, 542 U.S. 296, 310 (2004) ("[A] defendant who stands trial may consent to judicial factfinding as to sentence enhancements . . . ."). We are not persuaded that *Apprendi* requires us to interpret the at-risk victim provision as an element, rather than a sentence enhancer, for the purposes of Colorado's complicity statute.

¶26 In sum, a complicitor's dual mental state applies only to the elements of the underlying offense and not to strict liability sentence enhancers related to the nature of the offense. Because the at-risk victim provision in section 18-6.5-103 is a strict liability sentence enhancer to the underlying crime of theft, B.D. need not have been aware that the theft happened in the presence of an at-risk victim. He is subject to the enhanced punishment accompanying that circumstance, regardless.

---

Each of these contexts presents distinct concerns that should not be blurred in the overlapping search for legislative intent.

### III. Conclusion

¶27    We reverse the judgment of the court of appeals and remand the case for the district court to reinstate the adjudication and sentence.