The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 22, 2021

## 2021COA100

**No. 20CA0214, *People in Interest of N.D.O.* — Juvenile Court — Delinquency — Special Offenders — Violent Juvenile Offender; Criminal Law — Complicity**

In this appeal by the prosecution, a division of the court of appeals concludes that complicitor liability can support a crime of violence finding — a sentence enhancer — in juvenile delinquency proceedings. Because the trial court instructed the jury to the contrary, the division disapproves the court's ruling.

The division also concludes that the jury's general verdicts finding the juvenile guilty of aggravated robbery did not establish that he committed a crime of violence. Accordingly, the trial court was not required to adjudicate the juvenile a violent juvenile offender, and the sentence imposed was not illegal.

Court of Appeals No. 20CA0214
Jefferson County District Court No. 18JD483
Honorable Gregory G. Lyman, Judge

The People of the State of Colorado,

Petitioner-Appellant,

In the Interest of N.D.O.,

Juvenile-Appellee.

RULING DISAPPROVED AND SENTENCE AFFIRMED

Division IV
Opinion by JUDGE NAVARRO
Brown and Martinez*, JJ., concur

Announced July 22, 2021

Peter A. Weir, District Attorney, Colleen R. Lamb, Deputy District Attorney, Golden, Colorado, for Petitioner-Appellant

Nicole M. Mooney, Alternate Defense Counsel, Denver, Colorado, for Juvenile-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     In the proceedings below, the juvenile, N.D.O., was adjudicated delinquent.  The prosecution raises two arguments on appeal.  First, the prosecution argues that the trial court incorrectly stated the law by instructing the jury that complicitor liability cannot support a crime of violence finding, which is a sentence enhancer.  Applying the combined force of our supreme court's decisions in *People v. Swanson*, 638 P.2d 45 (Colo. 1981), and *People in Interest of B.D.*, 2020 CO 87, we agree with the prosecution and disapprove the court's ruling as to that instruction.  Second, the prosecution contends that N.D.O.'s sentence is illegal and asks us to remand with directions to sentence him as a violent juvenile offender.  We deny that request because N.D.O.'s sentence is not illegal given the jury's findings.

## I.     Factual and Procedural History

¶ 2     Several teenagers stole a car and committed armed robberies of four gas stations.  The prosecution alleged that N.D.O. was the getaway driver for two other teenagers who entered the stores and demanded, at gunpoint, that the clerks empty the registers.

¶ 3     The prosecution filed a petition in delinquency charging N.D.O. with (1) four counts of aggravated robbery with a

confederate; (2) four counts of aggravated robbery while possessing any article used or fashioned in a manner as to convince a person that it is a deadly weapon; and (3) one count of conspiracy to commit aggravated robbery while possessing any article used or fashioned as a deadly weapon. *See* § 18-4-302(1)(c)-(d), C.R.S. 2020 (aggravated robbery); § 18-2-201, C.R.S. 2020 (conspiracy). The petition also alleged that N.D.O. was a violent juvenile offender under section 19-2-516(3), C.R.S. 2020, because the robberies involved the use, or possession and threatened use, of a deadly weapon (i.e., they were crimes of violence), *see* § 18-1.3-406(2)(a)(I)(A), C.R.S. 2020.[1]

¶ 4     N.D.O. exercised his statutory right to a jury trial. § 19-2-107(1), C.R.S. 2020. At trial, the prosecution did not allege or present evidence that N.D.O. personally entered the gas stations. Instead, the prosecution argued that he committed the aggravated robbery offenses as a complicitor.

¶ 5     The trial court instructed the jury on the elements of complicitor liability and instructed the jury that complicitor liability

---

[1] In addition, the petition charged N.D.O. with possession of a handgun by a juvenile and aggravated motor vehicle theft. Neither of those adjudications is pertinent to, or affected by, this appeal.

could apply to the aggravated robbery offenses. In addition, on each verdict form for the aggravated robbery and conspiracy counts, the court submitted the following interrogatory: "Did the juvenile use, or possess and threaten the use of, a deadly weapon?" During deliberations, the jury asked, "Does complicity apply to the yes/no [deadly weapon] question on the Aggravated Robbery charges?" The prosecutor asked the court to instruct the jury that complicitor liability applied to the deadly weapon interrogatories. The court decided that the original instructions did not answer the jury's question and, thus, a supplemental instruction was necessary. But the court rejected the prosecutor's position and told the jury instead that, while complicitor liability applied to a substantive offense, the "theory of complicity" did not apply to the deadly weapon interrogatories.

¶ 6    The jury found N.D.O. guilty on all counts, but the jury found that he did not use, or possess and threaten the use of, a deadly weapon to commit any offense. The trial court adjudicated N.D.O. delinquent and sentenced him to two years of probation, with forty-five days of detention as a condition thereof.

## II. The Complicity Instruction

¶ 7 N.D.O. does not appeal the delinquency judgment. The prosecution, however, appeals the trial court's decision to instruct the jury that the theory of complicity did not apply to the deadly weapon interrogatories relevant to whether N.D.O was a violent juvenile offender. The prosecution asks us to disapprove the court's instruction. *See* § 19-2-903(2), C.R.S. 2020 ("The prosecution in a delinquency case may appeal any decision of the trial court as provided in section 16-12-102, C.R.S."); § 16-12-102(1), C.R.S. 2020 ("The prosecution may appeal any decision of a court in a criminal case upon any question of law.").

¶ 8 Under the Colorado Children's Code, "a trial court normally has broad discretion to craft a sentence it deems appropriate for a particular [juvenile] offender." *A.S. v. People*, 2013 CO 63, ¶ 15. But for certain classes of juveniles called "special offenders," the Colorado Children's Code imposes mandatory sentences. *See* § 19-2-908, C.R.S. 2020. One such class includes a "[v]iolent juvenile offender," a person who "is adjudicated a juvenile delinquent for a delinquent act that constitutes a crime of violence as defined in section 18-1.3-406(2)." § 19-2-516(3). A violent juvenile offender

4

"shall be placed or committed out of the home for not less than one year," with an exception not applicable here. § 19-2-908(1)(c)(I)(A). A trial court has no jurisdiction to depart from this sentence absent a statutory exception. *People in Interest of M.M.O.P.*, 873 P.2d 24, 26 (Colo. App. 1993).

¶ 9     As noted, the petition alleged that N.D.O. was a violent juvenile offender because he committed a delinquent act that constituted a crime of violence as defined in section 18-1.3-406(2)(a)(I)(A). That provision defines aggravated robbery as a crime of violence if the offense was "committed, conspired to be committed, or attempted to be committed by a person during which, or in the immediate flight therefrom, the person: (A) [u]sed, or possessed and threatened the use of, a deadly weapon." § 18-1.3-406(2)(a)(I)(A) & (2)(a)(II)(F).

¶ 10     The prosecution asks whether a trier of fact may find that a juvenile's delinquent act constituted a crime of violence (e.g., the act involved the use, or possession and threatened use, of a deadly weapon) under a complicity theory. *See* § 18-1-603, C.R.S. 2020 (defining complicity). We answer that question "yes" and thus disapprove the trial court's ruling and supplemental instruction.

5

## A. Invited Error

¶ 11    N.D.O. argues that the prosecution invited the alleged error by tendering the original complicity instructions without specifying that complicitor liability applied to the deadly weapon interrogatories. We disagree.

¶ 12    The invited error doctrine prevents a party from complaining on appeal of an error that he or she has invited or injected into the case. *People v. Rediger*, 2018 CO 32, ¶ 34. N.D.O. is correct that a party can invite an error by tendering an erroneous instruction. *See id.* And, while the record does not make entirely clear who tendered the original instructions, the prosecution does not dispute N.D.O.'s claim that it submitted them. The original instructions specifically applied complicity to the aggravated robbery charges (among others) but not to the deadly weapon interrogatories. The original instructions did not follow the advice of the Model Jury Instructions, which counsel that, in cases involving complicity, it may be appropriate to modify a crime of violence interrogatory by adding the words "or a complicitor" when asking if "the defendant" used, or possessed and threatened the use of, a deadly weapon. COLJI-Crim. ch. 1.3 cmt. 2 (2020).

¶ 13     As a result, the original instructions were, at the very least, ambiguous as to whether complicity applied to the deadly weapon interrogatories.  We thus understand why the jury asked its question and why the trial court found that the original instructions did not answer the question.  Still, the jury's question gave the court and the parties the opportunity to clarify the original instructions and to correct any erroneous impression left by them.

¶ 14     The error asserted on appeal is not in the original complicity instructions but in the court's supplemental instruction answering the jury's question.  Because the prosecution objected to that supplemental instruction, we do not discern invited error, and we turn to the merits.

## B.    The Merits

¶ 15     In our view, the combined force of two decisions from our supreme court compels the conclusion that a juvenile can be held accountable under a complicity theory for a crime of violence.

¶ 16     Under a complicity theory, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the

offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603.

¶ 17    In *People v. Swanson*, 638 P.2d 45 (Colo. 1981), the supreme court decided that complicity liability applied to a substantially similar version of the crime of violence statute. That is, the court *rejected* the notion that the crime of violence statute applied "only to a defendant who personally used or possessed and threatened to use a deadly weapon during the commission of a crime." *Id.* at 49 (citing § 16-11-309(2), C.R.S. 1973 (1978 Repl. Vol. 8)). The court emphasized that "[t]he mandatory sentence for conviction of [a] crime of violence is based on a recognition of the increased potential for harm arising from the manner in which the crime was committed" and "[t]his heightened danger is present regardless of which robber held the gun." *Id.* at 50. The court thus concluded that "an accessory to [a] crime of violence may be charged, tried and punished as a principal." *Id.* (holding that, "[b]ecause we determine the principles of complicity apply to a crime of violence," the trial court's contrary instruction was erroneous).

¶ 18    In *People in Interest of B.D.*, 2020 CO 87, the supreme court applied the complicity theory in the juvenile context. Several boys

8

broke into two homes, one of which was owned by a man considered an "at-risk" victim. *Id.* at ¶ 1. While B.D. waited outside, the man returned home and happened upon another boy stealing from his home. *Id.* B.D. was adjudicated delinquent, on a complicity theory, for theft in the presence of an at-risk victim. *Id.* at ¶ 3. B.D. challenged the sufficiency of the evidence on the ground that, to prove complicity liability, the prosecution had to show that he was aware that the at-risk victim was present during the theft, yet no such evidence was presented. *Id.* at ¶¶ 2, 5, 12. Rebuffing this challenge, the supreme court held that, because the at-risk victim's presence was merely a sentence enhancer of the theft offense (not an element), B.D. did not have to be aware of the at-risk adult's presence to be subject to this sentence enhancer. *Id.* at ¶¶ 2, 15, 26.

¶ 19    In so holding, the court also rejected B.D.'s argument that, because the complicity statute makes a complicitor accountable only for the principal's criminal offense, a complicitor cannot be subject to sentence enhancers given that they are not part of the offense. *Id.* at ¶ 16. The court explained that "complicity is a theory of liability, not an offense" and "once a defendant is found

9

guilty of the underlying offense, he 'is legally accountable as principal . . . for [the] criminal offense,' *including any sentence enhancers* related to the nature of the offense." *Id.* at ¶ 16 (quoting § 18-1-603) (emphasis added). Accordingly, the complicity statute put "B.D. on equal footing with his principal regarding the circumstances accompanying the commission of the offense, which then allow[ed] any relevant sentence enhancers to apply by their own force." *Id.*

¶ 20 Applying *B.D.* and *Swanson* to this case, we disapprove the trial court's supplemental instruction as to the crime of violence sentence enhancer.[2] Neither the complicity statute nor the Children's Code indicates that complicitor liability applies any differently in juvenile delinquency proceedings than it does in adult criminal proceedings. And our supreme court has applied the complicity statute to a juvenile in the same way it applies to an adult. *See B.D.,* ¶ 16. Because complicitor liability can support a crime of violence finding in the adult context, *see Swanson,* 638 P.2d at 49, complicitor liability can support a crime of violence

---

[2] We acknowledge that the trial court did not have the benefit of the decision in *People in Interest of B.D.*, 2020 CO 87.

10

finding in the juvenile context. In other words, the complicity statute puts the juvenile complicitor on equal footing with the principal regarding the circumstances accompanying the commission of the offense, including those making the offense a crime of violence. *See B.D.,* ¶ 16.

¶ 21    N.D.O.'s arguments do not convince us otherwise. He argues that the plain language of the violent juvenile offender statute applies only to the juvenile's own conduct, and not to another's conduct — especially not to the conduct of any adult involved in the crime. (One teenager who robbed the stores in this case was eighteen.) N.D.O. notes that section 19-2-516(3) addresses an adjudication "for a delinquent act that constitutes a crime of violence," and he contends this delinquent act must be committed by the charged juvenile because the statute does not expressly permit complicity liability. In support, he cites *Allman v. People,* 2019 CO 78, ¶¶ 29-33, which concluded that, because the probation statute does not grant courts the power to impose sentences to both imprisonment and probation in a multi-count case, a court may not impose imprisonment for some offenses and probation for others. *But cf. People v. Keen,* 2021 CO 50, ¶¶ 1, 22-

39 (limiting *Allman*'s reach where a defendant is sentenced to probation under the Colorado Sex Offender Lifetime Supervision Act of 1998).

¶ 22    Yet, N.D.O does not appeal the jury's finding that he committed aggravated robbery under a complicity theory.  *See People v. Ramirez,* 997 P.2d 1200, 1207 (Colo. App. 1999) ("A defendant is not convicted of complicity, but rather is convicted of an offense under a theory of complicity as the means by which the offense was committed by a particular defendant."), *aff'd by an equally divided court,* 43 P.3d 611 (Colo. 2001).  It is that delinquent act for which he is accountable to the same extent as the principal.  *See B.D.,* ¶ 16.  And, as noted, section 19-2-516(3) expressly permits a juvenile to be designated a violent juvenile offender for a delinquent act that constitutes a crime of violence. The only question left, therefore, was whether N.D.O.'s delinquent act constituted a crime of violence.

¶ 23    On that question, N.D.O. points out that the crime of violence statute does not mention complicity; it includes only an enumerated crime that is "committed, conspired to be committed, or attempted to be committed."  § 18-1.3-406(2)(a)(I).  To reiterate, however,

complicity is a theory by which a person *commits* a crime. Given that the crime of violence statute applies to an enumerated crime committed by one who used (or possessed and threatened to use) a deadly weapon — and considering *B.D.* and *Swanson* — we conclude that the jury should have been instructed to consider whether N.D.O.'s delinquent act constituted a crime of violence under a complicity theory.

¶ 24 N.D.O. also seems to claim that, pursuant to the applicable statutes, complicity liability cannot apply to (1) juveniles generally; (2) sentence enhancers with which juveniles are charged; or (3) crime of violence findings because they are not elements of an offense. To the extent he raises these claims, we reject them as foreclosed by *B.D.* and *Swanson*. We must follow our supreme court's precedent. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40. Relatedly, we are not persuaded by N.D.O.'s suggestion that *Allman* conflicts with *Swanson* and, thus, *Allman* implicitly overruled *Swanson*.

¶ 25 Finally, N.D.O., in arguing that juveniles should not be treated the same as adults, cites federal cases addressing constitutional limits on sentencing a juvenile as an adult. *See Miller v. Alabama,*

567 U.S. 460, 467 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *see also Lucero v. People*, 2017 CO 49, ¶ 15 ("*Graham* and *Miller* apply only where a juvenile is sentenced to the specific sentence of life without the possibility of parole for one offense."); *cf. People in Interest of T.B.*, 2021 CO 59, ¶ 74 (holding that mandatory lifetime sex offender registration for offenders with multiple juvenile adjudications constitutes punishment and is cruel and unusual in violation of the Eighth Amendment). But N.D.O. does not raise a constitutional challenge or contend that any statute is ambiguous and must be construed to avoid constitutional infirmity. *See People v. Ross*, 2021 CO 9, ¶ 35 ("The 'doctrine of constitutional avoidance' . . . applies only when courts interpret statutes that are ambiguous."). So those federal cases do not persuade us that we may depart from our supreme court's application of complicity liability to juveniles. *See B.D.*, ¶ 16.[3]

---

[3] We also find inapposite the decision in *J.D.B. v. North Carolina*, 564 U.S. 261, 264-65 (2011) ("[W]e hold that a child's age properly informs the *Miranda* custody analysis.").

¶ 26    For all these reasons, we disapprove the trial court's ruling and resulting instruction to the effect that complicity did not apply to the crime of violence interrogatories.[4]

### III.    N.D.O.'s Sentence

¶ 27    Next, the prosecution contends that the trial court's "failure to designate N.D.O. as a violent juvenile offender when he was adjudicated delinquent for a delinquent act that constituted a crime of violence as defined in section 18-1.3-406(2) resulted in an illegal sentence." *See People v. Anaya,* 894 P.2d 28, 31 (Colo. App. 1994) (recognizing that the People may challenge an illegal sentence for the first time on appeal); *cf.* Crim. P. 35(a) ("The court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time . . . ."). We disagree.

¶ 28    We review the legality of a sentence de novo. *People in Interest of J.S.R.,* 2014 COA 98M, ¶ 12. "An illegal sentence is one that is not authorized by law, meaning that it is inconsistent with the sentencing scheme established by the legislature." *People in*

---

[4] Because the issue is not before us, we do not address the requirements of complicitor liability on which a jury must be instructed in this context. *Cf. People v. Childress,* 2015 CO 65M, ¶¶ 29, 34, 39 (addressing complicitor liability generally).

*Interest of J.C.*, 2018 COA 22, ¶ 14 (citation omitted). The legality of N.D.O.'s sentence raises questions of statutory interpretation, which we also review de novo. *B.D.*, ¶ 8.

¶ 29 Initially, we note that, even if we concluded that the trial court's instructional error affected the jury's decision to acquit N.D.O. of the crime of violence charges, we could not remand for a new trial with correct instructions. "Any prosecutorial appeal under section 16-12-102(1) is necessarily limited to questions of law only. This section does not give the People a basis upon which to challenge the trial court's assessment of the evidence." *People v. Martinez*, 22 P.3d 915, 919 (Colo. 2001) (citations omitted). Hence, an "appellate court is limited in its review to determining whether the trial court erred, and it may not order a new trial if an error was committed and the defendant was subsequently acquitted." *People v. Allee*, 740 P.2d 1, 8 (Colo. 1987); *see* § 16-12-102(1) ("Nothing in this section shall authorize placing the defendant in jeopardy a second time for the same offense.").

¶ 30 The prosecution, however, does not request a remand for a new trial. Instead, the prosecution contends that it does not matter that the jury answered "no" to the deadly weapon interrogatories

because — unlike when an adult is charged with a crime of violence — such specific findings are not necessary to designate an accused a violent juvenile offender (i.e., to conclude that a juvenile committed a crime of violence). *Cf.* § 18-1.3-406(4) (requiring the jury to make "a specific finding" as to whether the accused used, or possessed and threatened to use, a deadly weapon). Therefore, the prosecution continues, we need only look to the jury's general verdicts on the substantive offenses. According to the prosecution, the jury found N.D.O. guilty of crimes of violence because the jury found him guilty of eight counts of aggravated robbery and "[e]ach of those counts required a deadly weapon finding as one of the elements of the offense." So, the prosecution concludes that the "jury necessarily found the use of a deadly weapon when it found [N.D.O.] guilty of each of those counts."

¶ 31 We need not decide if we agree with the prosecution that no specific crime of violence findings by the jury were necessary. Even if the prosecution were right, we would still reject the prosecution's conclusion because the general verdicts do not show that the jury necessarily found the use of a deadly weapon.

17

¶ 32    The jury convicted N.D.O. of the following forms of aggravated

robbery:

> (1) A person who commits robbery is guilty of
> aggravated robbery if during the act of robbery
> or immediate flight therefrom:
>
> . . .
>
> (c) He has present a confederate, aiding or
> abetting the perpetration of the robbery, armed
> with a deadly weapon, with the intent, either
> on the part of the defendant or confederate, if
> resistance is offered, to kill, maim, or wound
> the person robbed or any other person, or by
> the use of force, threats, or intimidation puts
> the person robbed or any other person in
> reasonable fear of death or bodily injury; or
>
> (d) He possesses any article used or fashioned
> in a manner to lead any person who is present
> reasonably to believe it to be a deadly weapon
> or represents verbally or otherwise that he is
> then and there so armed.

§ 18-4-302.  Robbery occurs where a person "knowingly takes

anything of value from the person or presence of another by the use

of force, threats, or intimidation."  § 18-4-301(1), C.R.S. 2020.

¶ 33    Neither form of aggravated robbery described above requires

the *use,* or possession and *threatened use,* of a deadly weapon.

Subsection (1)(c) of section 18-4-302 requires the presence of a

confederate armed with a deadly weapon who has the intent to

18

harm another person if resistance is offered or who, by the use of force, threats, or intimidation, puts any person in reasonable fear of death or bodily injury. Simply possessing a deadly weapon with the intent to use it does not satisfy the applicable crime of violence definition. *See* § 18-1.3-406(2)(a)(I)(A). Nor does subsection (1)(c) require that the confederate use force, threats, or intimidation *with a deadly weapon* — in contrast to subsection (1)(b) of the same statute ("by the use of force, threats, or intimidation with a deadly weapon puts the person robbed or any other person in reasonable fear of death or bodily injury"). § 18-4-302(1).[5]

¶ 34 Likewise, subsection (1)(d) does not require the use of an actual deadly weapon. *Id.* Rather, "a defendant may be convicted if the robbery is committed with the use of an item in a manner in which the victim would reasonably believe it to be a deadly weapon (i.e., a simulated deadly weapon)." *People v. Palmer*, 2018 COA 38,

---

[5] In full, section 18-4-302(1)(b), C.R.S. 2020, provides that a person who commits robbery is guilty of aggravated robbery if, during the robbery or the immediate flight therefrom, "[h]e knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury."

¶ 19; *see People v. Manyik*, 2016 COA 42, ¶ 50 (noting that section 18-4-302(1)(d) does not create a per se crime of violence).

¶ 35　　Not surprisingly, then, only conduct falling within subsection (1)(b) constitutes a per se crime of violence. *Terry v. People*, 977 P.2d 145, 151 (Colo. 1999); *see* § 18-4-302(4) ("If a defendant is convicted of aggravated robbery pursuant to paragraph (b) of subsection (1) of this section, the court shall sentence the defendant in accordance with the provisions of section 18-1.3-406."). N.D.O. was not found guilty of violating subsection (1)(b).

¶ 36　　Because N.D.O. could have committed aggravated robbery under subsections (1)(c) and (1)(d) without using, or possessing and threatening to use, a deadly weapon, such a crime of violence finding was not implicit in the jury's guilty verdicts as to those offenses. *See People v. Lutz*, 803 P.2d 184, 185 (Colo. 1990) ("Because the two crimes require different elements of proof, the jury could reasonably find, from the same evidence, that the elements of aggravated robbery were present, while the elements of crime of violence were absent."). Therefore, the jury's verdicts do

not establish that N.D.O. was adjudicated for a delinquent act that constituted a crime of violence.

¶ 37 As a result, the trial court did not impose an illegal sentence by failing to designate N.D.O. a violent juvenile offender with a corresponding sentence.

## IV.  Conclusion

¶ 38 The ruling is disapproved, and the sentence is affirmed.

JUDGE BROWN and JUSTICE MARTINEZ concur.